# Nos. 11-17948, 12-17765

---

## In The United States Court of Appeals
## for the Ninth Circuit

MIRSAD HAJRO, et al.,

*Plaintiffs-Appellees,*

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, et al.,

*Defendants-Appellants.*

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

───────────────

**BRIEF OF APPELLANTS**

───────────────

STUART F. DELERY
  *Assistant Attorney General*

MELINDA HAAG
  *United States Attorney*

LEONARD SCHAITMAN
  (202) 514-3441

MARK W. PENNAK
  (202) 514-1673
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *950 Pennsylvania Avenue, NW*
  *Department of Justice*
  *Washington, D.C. 20530-0001*

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATUTES AND REGULATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.   Introduction and Rulings Under Review. . . . . . . . . . . . . . . . . . . . . . . . . 3

B.   Factual and Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1. The Mayock Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    2. Plaintiff Hajro's request for documents. . . . . . . . . . . . . . . . . . . . . . . . 7

    3. Plaintiffs' FOIA suit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        a. The District Court's merits decision. . . . . . . . . . . . . . . . . . . . . . . 9

        b. The District Court's injunctive order . . . . . . . . . . . . . . . . . . . . . 11

    4. The District Court's fee decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.   THE STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.  THIS COURT HAS JURISDICTION IN NO. 11-17948. . . . . . . . . . . . . . 16

III.   THE DISTRICT COURT LACKED SUBJECT MATTER
       JURISDICTION TO ENFORCE THE MAYOCK AGREEMENT....... 24

       A.   The Mayock Agreement Is a Contract. . . . . . . . . . . . . . . . . . . . . . . . 24

       B.   Plaintiffs Have a Contractual Remedy Only Under The
            Tucker Act in the Court of Federal Claims. . . . . . . . . . . . . . . . . . . 28

IV.    PLAINTIFFS MAY NOT OBTAIN A "PATTERN
       AND PRACTICE" INJUNCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

       A.   The Scope of FOIA Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

       B.   A FOIA Pattern and Practice Claim. . . . . . . . . . . . . . . . . . . . . . . . 32

            1.   Plaintiff Mayock lacks standing to bring a FOIA claim. . . . 34

            2.   Plaintiff Hajro lacks standing to recover on a pattern and
                 practice claim under FOIA. . . . . . . . . . . . . . . . . . . . . . . . . . . 38

       C.   Plaintiffs Have Failed To Show A Discrete Policy or Practice
            Necessary For A Pattern and Practice Claim. . . . . . . . . . . . . . . . . 43

IV.    THE DISTRICT COURT'S INJUNCTIVE RELIEF IS OVERBROAD. . 46

       A.   The Orders Go Beyond FOIA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

       B.   Nationwide Injunctive Relief Would Be Improper. . . . . . . . . . . . . 51

V.     THE FEE AWARD SHOULD BE VACATED AND REMANDED. . . . . 53

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

STATUTORY ADDENDUM

ADDENDUM

# TABLE OF AUTHORITIES

**CASES**:

*A. Bauer Mechanical, Inc. v. Joint Arbitration Bd.*,
   562 F.3d 784 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Adam Technologies Intern. S.A. de C.V. v. Sutherland Global Services, Inc.*,
   729 F.3d 443 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*American Library Association v. FCC*, 401 F.3d 489 (D.C. Cir. 2005). . . . . . . . 34

*Arlington Heights v. Metropolitan Housing Development Corp.*,
   429 U.S. 252 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Brem–Air Disposal v. Cohen*, 156 F.3d 1002 (9th Cir. 1998). . . . . . . . . . . . . . . 44

*Brown v. Columbia Sussex Corp.*, 664 F.3d 182 (7th Cir. 2011. . . . . . . . . . . 20, 23

*Buckhannon Bd. & Care Home, Inc. v. West Va. Dept. of Health
   & Human Res.*, 532 U.S. 598 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 49

*Burka v. HHS*, 142 F.3d 1286 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . 56

*Capitol Sprinkler Inspection, Inc. v. Guest Services, Inc.*,
   630 F.3d 217 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Carter v. Veterans Admin.*, 780 F.2d 1479 (9th Cir. 1986). . . . . . . . . . . . . . . . . 32

*Childress v. Darby Lumber, Inc.*, 357 F.3d 1000 (9th Cir. 2004). . . . . . . . . . . . 16

*Chlorine Institute, Inc. v. Federal R.R. Admin.*,
   718 F.3d 922 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Citizens for Resp. & Ethics in Wash. v. FEC*,
   711 F.3d 180 (D.C. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*Clausen v. Sea–3, Inc.*, 21 F.3d 1181 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 23

*Cobell v. Norton*, 392 F.3d 461 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 46, 47

*Conn v. Gabbert*, 526 U.S. 286 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Cornucopia Institute v. Dept. of Agriculture*, 560 F.3d 673 (7th Cir. 2009) . . . . 32

*Cunningham v. United States*, --- F.3d ----,
  2014 WL 1377792 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011. . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Del Monte Fresh Produce N.A., Inc. v. United States*,
  706 F. Supp. 2d 116 (D.D.C. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Demorest v. Ryan*, 156 Fed. Appx. 931 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 21

*Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) . . . . . . . . . . 31, 46, 55

*Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996) . . . . . 53

*Exner v. FBI*, 542 F.2d 1121 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*,
  742 F.3d 377 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

*Farrar v. Hobby*, 506 U.S. 103 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Fiduccia v. DOJ*, 185 F.3d 1035 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 50

*FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269 (1991). . . . . 19, 20

*Franklin-Mason v. Mabus*, --- F.3d ----, 2014 WL 903135 (D.C. Cir. 2014). . . . 29

*Galam v. Carmel (In re Larry's Apartment, L.L.C.)*,
  249 F.3d 832 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Galt G/S v. JSS Scandinavia*, 142 F.3d 1150 (9th Cir. 1998).. . . . . . . . . . . . . . 16

*Garwood Packaging, Inc. v. Allen & Co., Inc.* 378 F.3d 698 (7th Cir. 2004). . . . 22

*Hajro v. USCIS*, 832 F. Supp. 2d 1095 (N.D. Cal. 2011).. . . . . . . . . . . . . . . . . 9

*Hajro v. USCIS*, 900 F. Supp. 2d 1034 (N.D. Cal. 2012).. . . . . . . . . . . . . . . . . 11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011). . . . . . . . . . . . . . . 29, 30

*Hospitality House, Inc. v. Gilbert*, 298 F.3d 424 (5th Cir. 2002).. . . . . . . . . . . . 27

*In re Bryson*, 406 F.3d 284 (4th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Long-Distance Telephone Service Federal Excise Tax Refund Litigation,*
    --- F.3d ----, 2014 WL 1851911 (D.C. Cir. May 09, 2014). . . . . . . . . . . . . . . 47

*Kendall v. Homestead Dev. Co.,* 17 F.3d 291 (9th Cir. 1994). . . . . . . . . . . . . . . 21

*Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir. 1996).. . . . . . . . . . . . . . . . . . 17

*Khan v. AG of the United States*, 691 F.3d 488 (3d Cir. 2012). . . . . . . . . . . . . . . 22

*Kissinger v. Reporters Committee for Freedom of the Press*,
    445 U.S. 136 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 35, 55

*Kokkenen v. Guardian Life Ins. Co. of America*, 993 F.2d 883 (9th Cir.1993),
    *reversed*, 511 U.S. 375 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Kokkonen v. Guardian Life Ins. Cop. of America*,
    511 U.S. 375 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 25-28

*Kontrick v. Ryan*, 540 U.S. 443 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kowalski v. Tesmer*, 543 U.S. 125 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

*Lane v. Dep't of Interior*, 523 F.3d 1128 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 16

*Lane v. Peña*, 518 U.S. 187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Lee v. Thornton*, 420 U.S. 139 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Lewis v. Casey*, 518 U.S. 343 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Lindstrom v. United States*, 510 F.3d 1191 (10th Cir. 2007). . . . . . . . . . . . . . . . . 27

*Long v. IRS*, 693 F.2d 907 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 41

*Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011). . . . . 52

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . 43, 44, 46

*Mayock v. INS,* 714 F. Supp. 1558 (N.D. Cal. 1989). . . . . . . . . . . . . . . . . . . . . 5, 37

*Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991). . . . . . . . . . . . . . . . . 5, 34, 36, 38

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178 (1936). . . . . . . . 27

*Meinhold v. U.S. Dep't of Defense,* 34 F.3d 1469 (9th Cir. 1994). . . . . . . . . . . . . 53

*Minier v. CIA*, 88 F.3d 796 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Morongo Band of Mission Indians v. California State Bd. of Equalization*,
    858 F.2d 1376 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Munoz v. Mabus*, 630 F.3d 856 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Muttitt v. United States Central Command,*
    813 F. Supp. 2d 221 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003). . . . . . . . . 39

*National Whistleblower Center v. Department of Health and Human Services,*
  839 F. Supp. 2d 40 (D.D.C. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Natural Resources Defense Council v. EPA,* 735 F.3d 873 (9th Cir. 2013) . . . . . 43

*NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77 (D.C. Cir. 2012). . . . . . 34

*Newport Aeronautical Sales v. Department of Air Force,*
  684 F.3d 160 (D.C. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 41, 45, 46

*Nichols v. Pierce*, 740 F.2d 1249 (D.C. Cir. 1984).. . . . . . . . . . . . . . . . . . . . . . . . 57

*NLRB v. Express Pub. Co.*, 312 U.S. 426 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . 47

*North Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir. 1985). . . . . . . . . . . . . . 30

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004).. . . . . . . . . 44-46

*NTEU v. United States*, 101 F.3d 1423 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . 35

*Open Am. v. Watergate Special Prosecution Force,*
  547 F.2d 605 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Oregon Natural Desert Ass'n v. Locke,*
  572 F.3d 610 (9th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . 16, 32, 55, 56, 58, 59

*Outlaw v. Airtech Air Conditioning and Heating, Inc.,*
  412 F.3d 156 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

*Papa v. United States*, 281 F.3d 1004 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . 32

*Payne Enterprises v. United States*, 837 F.2d 486 (D.C. Cir. 1988). . . . . 33, 41, 45

*Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Prudential Locations LLC v. HUD*, 739 F.3d 424 (9th Cir. 2013).. . . . . . . . . . . . 15

*Quick v. Dept. of Commerce, Nat. Institute of Standards and Technology*,
  775 F. Supp. 2d 174 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Richardson v. Morris*, 409 U.S. 464 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Rothe Development, Inc. v. Dept. of Defense*, 666 F.3d 336 (5th Cir. 2011). . . . . 30

*Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208 (1974). . . . . . . . 42

*Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947 (1984) . . . . . . 41

*Serine v. Peterson*, 989 F.2d 371 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Shaffer v. Veneman*, 325 F.3d 370 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . 28, 30

*Sharp v. Weinberger*, 798 F.2d 1521 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . . 30

*Siskiyou Reg'l Educ. Project v. United States Forest Serv.*,
  565 F.3d 545 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458 (5th Cir. 2010); . . . . . . . . . . 27, 28

*Soriano v. United States*, 352 U.S. 270, 276 (1957). . . . . . . . . . . . . . . . . . . . . . . 55

*Spurlock v. FBI*, 69 F.3d 1010 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). . . . . . . . . . . . . . . . . 24

*Suburban Mortg. Associates, Inc. v. Dept. of Housing and Urban Development*,
  480 F.3d 1116 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009). . . . . . . . . . . . . . . . . . . . . . 34

*Swope v. Columbian Chemicals Co.*, 281 F.3d 185 (5th Cir. 2002). . . . . . . . . . . 23

*Texas v. United States,* 523 U.S. 296 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Thomas v. City of Tacoma*, 410 F.3d 644 (9th Cir. 2005. . . . . . . . . . . . . . . . . . . . 57

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985). . . . . . . . . . . 38

*Transohio Savs. Bank v. Dir., Office of Thrift Supervision*,
  967 F.2d 598 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Trigueros v. Adams,* 658 F.3d 983 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Jones*, 131 U.S. 1 (1889). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. King*, 395 U.S. 1 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Park Place Associates, Ltd.*, 563 F.3d 907 (9th Cir. 2009). . . . . 30

*VanDesande v. United States*, 673 F.3d 1342 (Fed. Cir. 2012). . . . . . . . . . . . . . 29

*Walsh v. VA*, 400 F.3d 535 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . 32, 43, 44

*Warth v. Seldin*, 490 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Webster v. Fall*, 266 U.S. 507 (1925). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Whitmore v. Arkansas*, 495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Wilkinson v. FBI*, 922 F.2d 555 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . 28

**STATUTES**:

2007 Open Government Act, Pub. Law 110-175,
  121 Stat. 2524 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50, 58

Equal Access to Justice Act, 28 U.S.C. 2412(d)(1)(A) . . . . . . . . . . . . . . . . . . . 56

5 U.S.C. §551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5 U.S.C. §552 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5 U.S.C. §552 Note. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

5 U.S.C. §552(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 31, 49

5 U.S.C. §552(a)(4)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

5 U.S.C. §552(a)(4)(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 55

5 U.S.C. §552(a)(4)(E)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

5 U.S.C. §552(a)(6)(A),(B),(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. §552(a)(6)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17, 48

5 U.S.C. §552(a)(6)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

5 U.S.C. §552(a)(6)(A)(i),(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 U.S.C. §552(a)(6)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 U.S.C. §552(a)(6)(C)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

5 U.S.C. §552(a)(6)(C)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

5 U.S.C. §552(a)(6)E(i)(II). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 U.S.C. §555(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5 U.S.C. §702.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5 U.S.C. §704.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 44

5 U.S.C. §706.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5 U.S.C. §706(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

6 U.S.C. §§271(b), 557... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §636(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

28 U.S.C. §1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1491(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**REGULATIONS**:

5 C.F.R. §5.5(c)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

72 Fed. Reg. 9017-01 (Feb. 28, 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**RULES**:

Rule 4(a)(2), FRAP. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 16-18, 20-23

Rule 54(b), FRCP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rule 58, FRCP.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# In The United States Court of Appeals for the Ninth Circuit

---

Nos. 11-17948, 12-17765

---

MIRSAD HAJRO, et al. ,
*Plaintiffs - Appellees,*

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, et al.,
*Defendants- Appellants*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

---

**BRIEF OF APPELLANTS**

---

**JURISDICTIONAL STATEMENT**

Plaintiffs invoked the district court's jurisdiction under 5 U.S.C.
§552(a)(4)(B), 5 U.S.C. §551 et seq., 5 U.S.C.§ 555(b), §702, §704 and §706, and
28 U.S.C. §1331, alleging that their complaint arose "under the Freedom of
Information Act. 5 U.S.C. §552 et seq." (First Amended Complaint ¶8, RE 78).
The corrected judgment of the district court on summary judgment was filed
October 13, 2011 (RE 104), and the court's final injunctive order implementing its
prior summary judgment order was entered May 7, 2012. (RE 32). The

government filed a notice of appeal on December 12, 2011. (RE 70). The district court entered its order awarding FOIA attorney fees on October 15, 2012. (RE 1). The government filed a notice appeal from this fee award on December 14, 2012. (RE 73). These appeals have been consolidated in this Court under docket numbers 11-17948 (merits) and 12-17765 (fees). By order dated January 6, 2014, this Court has requested the government to address "whether this court has jurisdiction over appeal No. 11- 17948." As more fully set forth *infra*, this Court has jurisdiction over both appeals under 28 U.S.C. §1291.

## QUESTIONS PRESENTED

1. Whether this Court has jurisdiction in No. 11-17948 under Rule 4(a)(2), FRAP, where the notice of appeal was filed from the district court's order granting summary judgment as to all parties and all claims and awarding equitable relief to plaintiffs, but prior to the entry of a "form of injunction" implementing that summary judgment order.

2. Whether the district court lacked jurisdiction to specifically enforce the FOIA settlement agreement ("the Mayock Agreement" or "the Agreement") entered in 1992 between plaintiff James Mayock and the then-existing Immigration and Naturalization Service ("INS"), where the Agreement was not signed by the

district court and the district court did not purport to retain jurisdiction to enforce the Agreement.

3. Whether the district court erred in holding that plaintiffs had standing to obtain injunctive relief on a claim that defendant United States Citizenship and Immigration Services ("USCIS") had a "pattern and practice" of violating FOIA time deadlines in registration file cases.

4. Whether the district court erred in issuing what could be construed as a nationwide injunction against USCIS, requiring it to comply with the FOIA time deadlines in alien registration file FOIA cases without any apparent limitation of that order to the parties or controversy before the court.

5. Whether the attorneys fees award by the district court should be vacated and remanded for further consideration.

## STATUTES AND REGULATIONS

Relevant statutory provisions are reproduced in the accompanying statutory addendum.

## STATEMENT OF THE CASE

### A.   Introduction and Rulings Under Review

This case arises on FOIA claims filed by a FOIA requestor (plaintiff Mirsad Hajro) and breach of contract claims filed by an immigration attorney (plaintiff

James Mayock) against USCIS. Plaintiffs claim that USCIS unreasonably delayed in responding to Hajro's FOIA request and violated a 1992 settlement agreement reached between Mayock and USCIS's predecessor agency, the Immigration and Naturalization Service ("INS") in FOIA litigation brought by Mayock in the 1980s.[1] The district court specifically enforced the settlement agreement on behalf of both plaintiffs, held that USCIS failed to comply with FOIA's time requirements as to Hajro's claims, and imposed "pattern and practice" injunctive relief against USCIS. By separate order, the district court awarded FOIA attorneys fees for all claims, regardless of whether the underlying claims were FOIA claims and regardless of whether plaintiffs had prevailed on those claims and arguments.

## B. Factual and Procedural History

The lead named plaintiff, Mirsad Hajro, was a lawful permanent resident of the United States. The other named plaintiff is James Mayock, who is a San Francisco-based immigration attorney.[2] Hajro applied for naturalization and was

---

[1] USCIS is part of the United States Department of Homeland Security. See 6 U.S.C. §§271(b), 557.

[2] The original defendants also included the Attorney General and the Secretary of Homeland Security and other individual named officials sued in their official capacities. The district court granted summary judgment as to these defendants and plaintiffs have not cross-appealed. (RE 35, 42-44). Accordingly, USCIS remains the sole defendant.

denied on grounds that he had misrepresented his foreign military service. (RE 35). Hajro filed an appeal from that determination and ultimately prevailed on that appeal. While his naturalization appeal was pending, Hajro also filed a FOIA request with the agency for his registration file and requested expedited treatment of that request under a 1992 settlement agreement between James Mayock and the INS (the "Mayock Agreement"). (RE 36).

### 1. The Mayock Agreement

The Mayock Agreement arose in litigation taking place in the late 1980s and early 1990s between INS and plaintiff James Mayock, who sued on behalf of his then-existing clients. In that case, Mayock challenged INS delays in responding to FOIA requests and sought equitable relief to compel INS to meet the FOIA deadlines. The district court issued the requested injunction on a motion for summary judgment. *Mayock v. INS,* 714 F. Supp. 1558, 1561 (N.D. Cal. 1989). On appeal, this Court reversed, holding that fact issues precluded summary judgment. *Mayock v. Nelson*, 938 F.2d 1006 (9th Cir. 1991).

After further proceedings on remand, the district court issued a new order and both parties filed notices of appeal to this Court. While those appeals were pending, the parties entered into a settlement agreement, which was filed with the district court on May 27, 1992. See Addendum, attached hereto. Under this

- 5 -

agreement, the INS agreed "to establish a national policy on Priority for Processing Freedom of Information Act/Privacy Act ("FOIA/PA") Requests."  (Agreement ¶4).  Under that "national policy," INS agreed to the immediate processing of an expedited request where (a) "an individual's life or personal safety would be jeopardized by the failure to process a request," or (b) "substantial due process rights of the requester would be impaired by the failure to process immediately, and the information sought is not otherwise available."  (Agreement, Attachment A).

On April 28, 1992, the district court in *Mayock* entered an order dismissing the case with prejudice, after being advised by the parties that a settlement had been reached.  See *Mayock* Docket Sheet and Dismissal Order of April 28, 1992.[3] (Addendum).  On May 27, 1992, plaintiff filed the settlement agreement with the district court through a pleading styled "Notice of Filing of Settlement Agreement."  (Addendum).  While thus filed with the district court in *Mayock*, the district court did not enter any order incorporating or adopting the Mayock

_____

[3] A copy of the (1) Mayock Agreement as filed with the district court on May 27, 1992, (2) the district court docket sheet in *Mayock,* and (3) the district court's April 28, 1992 dismissal order are set forth in the accompanying Addendum to this brief. This Court may take judicial notice of these materials under Rule 201(b),(f), Fed. R. Evid., and we ask the Court to do so here.  See, e.g., *Trigueros v. Adams,* 658 F.3d 983, 987 (9th Cir. 2011).

Agreement or otherwise enter any order retaining jurisdiction over the case. See *Mayock* District Court Docket Sheet (Addendum).

### 2. Plaintiff Hajro's request for documents

In this case, USCIS denied expedited processing of the FOIA request made by plaintiff Hajro, but placed his request on "Track 2," which is the track for "complex" cases. (RE 36). As the district court found, USCIS has, since 2007, used a three "track" system for FOIA requests. Under this approach, Track 1 was used for simple requests, Track 2 for complex requests, and Track 3 for "expedited processing for individuals subject to removal proceedings and scheduled for a hearing before an immigration judge." (Id.). This approach was published in the Federal Register, but the agency did not make use of formal notice and comment rulemaking procedures prior to doing so. See 72 Fed. Reg. 9017-01 (Feb. 28, 2007). Plaintiffs alleged that these Track 3 procedures were contrary to the Mayock Agreement and were improperly promulgated without notice and comment.

### 3. Plaintiffs' FOIA suit

In March 2008, plaintiffs Hajro and Mayock filed suit in federal district court under FOIA. As subsequently amended in June 2008 (RE 76), plaintiffs' complaint alleges nine claims. First, plaintiffs alleged that Track 3 of USCIS's

procedures violated the Mayock Agreement. Second, plaintiffs alleged that USCIS's denial of expedited processing of Hajro's FOIA request violated the Mayock Agreement. Third, plaintiffs alleged that USCIS violated the time requirements of 5 U.S.C. §552(a)(6)(A), in responding to Hajro's FOIA request. Fourth, plaintiffs alleged that USCIS failure to advise Hajro of the "unusual circumstances" within 20 days violated 5 C.F.R. §5.5(c)(1).

Fifth, plaintiffs alleged that defendants engaged in a "pattern and practice" of failing to comply with the FOIA time requirements set forth in 5 U.S.C. §552(a)(6)(A),(B),(C). Sixth, plaintiffs alleged that USCIS unlawfully withheld requested documents from Hajro in violation of FOIA and the Administrative Procedure Act ("APA"). Seventh, plaintiffs alleged that the withholding of the material interfered with Hajro's ability to defend himself in the naturalization proceedings and thus violated his due process rights. Eighth, plaintiffs alleged that USCIS's Track 3 policy violated equal protection guarantees of the Fifth Amendment. Finally, plaintiffs alleged that the Track 3 policy was promulgated without notice and comment in violation of the APA. (RE 40). Hajro filed his FOIA request in November 2007. (RE 35). Hajro received a partial production of documents in March 2008 and additional records in July of 2008. In December

2008, USCIS issued a "Vaughn index" for documents withheld under a FOIA Exemption.  (RE 37).

### a.  The District Court's merits decision

The district court's merits decision (by the Magistrate) (RE 34) is reported as *Hajro v. USCIS*, 832 F. Supp. 2d 1095 (N.D. Cal. 2011).  As amended on October 13, 2011, the district court first held that plaintiffs were entitled to summary judgment on the pattern and practice claims, noting that "Plaintiffs have submitted declarations from Mayock and 26 other immigration attorneys attesting to USCIS's repeated delays of months and in some cases years in responding to aliens' requests for their registration files."  (RE 44).  See also RE 47.  In so holding, the court first concluded that Mayock, as an immigration attorney, had standing to bring such claims.  The court found that there were extended delays associated with the agency's response to Hajro's request and that Mayock's evidence showed that such delays occurred in other cases.  (RE 48-49).  Based on this evidence, the court then found that prospective injunctive relief was appropriate, noting that "Defendants offer no good faith explanation for the three-month delay of the district office or for the many extended delays testified to by Mayock and his peer immigration lawyers."  (RE 49).

The court thus rejected USCIS's argument that it has now "considered and released '[a]ll reasonably segregable nonexempt responsive records known to exist" and that the case was therefore moot. (RE 51). The district court reasoned that the case was not mooted by the production of documents because "[t]he government has not countered Plaintiffs' evidence that USCIS failed to comply with the requirements of Sections 552(a)(6)(A) and (B) in Hajro and Mayock's cases, or Plaintiffs' contention that such failure to comply is symptomatic of USCIS's policy for responding to FOIA requests for alien registration files." (Id.).

Finally, the court rejected USCIS's argument that The Electronic Freedom of Information Amendments of 1996, PL 104-231, 110 Stat. 3048 (1996), superseded the Mayock Agreement. (RE 61). The court held that the 1996 Amendments were consistent with the Mayock Agreement because these Amendments expressly allowed an agency to provide for expedited processing "in other cases determined by the agency" and that the Mayock Agreement qualified under that provision. 5 U.S.C. §552(a)(6)E(i)(II). (RE 65). The district court also found that the Track 3 Policy was improperly issued without notice and comment procedures in violation of the APA (RE 65), and that the Track 3 Policy violated Hajro's due process rights. (RE 60). The court, however, found for USCIS on plaintiffs' equal protection claims (RE 67).

- 10 -

### b. The District Court's injunctive order

On May 7, 2012, the district court entered an injunction against USCIS, stating (RE 32):

> 1) USCIS shall comply with the requirements set forth in 5 U.S.C. §552(a)(6)(A) and (B).
> a) USCIS shall provide a copy of a requestor's alien registration file within the twenty business-day time limit mandated by 5 U.S.C. §552(a)(6)(A)(i).
> b) USCIS shall make a determination with respect to any FOIA appeal within the twenty-business-day time limit mandated by 5 U.S.C. §552(a)(6)(A)(ii).
> c) USCIS shall issue the written notice mandated by 5 U.S.C. §552(a)(6)(B) to a requestor if an extension of an additional ten business days is needed due to "unusual circumstances." This written notice must set forth the unusual circumstances, as defined in 5 U.S.C. §552(a)(6)(B)(iii) for such extension and setting a new response date. The final response date shall be within 30 business days of the original request date.

### 4. The District Court's fee decision

The district court subsequently awarded attorneys fees to plaintiffs under the attorneys fees provision of FOIA, 5 U.S.C. §552(a)(4)(E). *Hajro v. USCIS*, 900 F. Supp. 2d 1034 (N.D. Cal. 2012) (RE 1). The court found that fees were appropriately payable under Section 552(a)(4)(E) "to Claim Three (untimely response under FOIA to Hajro's request for documents); Claim Four (untimely explanation under FOIA of Defendants' decision not to expedite Hajro's request);

- 11 -

Claim Five (pattern and practice of violating FOIA's time limits); and Claim Six (withholding documents in violation of FOIA)."  (RE 8).

The court also held that plaintiffs were entitled to FOIA fees on claims One and Two for their enforcement of the Mayock Agreement, even though the court found that the Settlement Agreement suit was not brought under FOIA and "therefore not obviously within the scope of Section 552(a)(4)(E)."  (RE 9-10). The court nonetheless held fees were appropriate under FOIA because Mayock "was monitoring Defendants' compliance, and therefore is permitted to recover attorneys' fees under FOIA's provisions."  (RE 10).  Finally, the district court awarded FOIA fees on the due process, equal protection and APA claims (claims 7-9), ruling that, even though these claims did not arise under FOIA, these claims arose out of a "common nucleus of operative facts" and fees were warranted "because they [these claims] accompany and related to Claims One through Six, which do qualify for fees under Section 552(a)(4)(E), the court may award attorneys fees for them."  (RE 25).  The court awarded fees on plaintiffs' unsuccessful equal protection claim on the ground that plaintiffs "achieved their goals of enforcing the Settlement Agreement and obtaining an injunction requiring Defendants' compliance with FOIA's mandates despite the fact that they failed to prevail on the Equal Protection claim."  (RE 26).

- 12 -

## SUMMARY OF ARGUMENT

1.  This Court has jurisdiction over the merits appeal under Rule 4(a)(2), FRAP.  The district court's entry of summary judgment on October 13, 2011, addressed all the claims of all the parties and purported to award essentially the same relief that the district court reiterated in the court's final May 7, 2012 order. The filing of the notice of appeal from the court's summary judgment order was objectively reasonable.  The May 7, 2012 order merely implemented the relief already granted in the summary judgment order and was "ministerial" under the precedents of this Court and other circuits as well as under controlling Supreme Court authority construing Rule 4(a)(2).  Accordingly, the notice of appeal from the October 13, 2011 summary judgment order became effective upon entry of the May 7, 2012 order.

2.  Under *Kokkonen v. Guardian Life Ins. Cop. of America*, 511 U.S. 375 (1994), the district court lacked subject matter jurisdiction to enforce the Mayock Agreement.  That Agreement was not endorsed or signed by the district court, and was not entered as a court order.  The district court did not purport to retain jurisdiction with respect to the Agreement.  The Agreement merely reflects the parties' mistaken understanding that the district court had inherent enforcement authority under then-existing Ninth Circuit precedent that was later expressly

- 13 -

rejected by the Supreme Court in *Kokkonen*. The Agreement is therefore a contract that may be enforced against the United States only under the Tucker Act in the Court of Federal Claims.

3. Both Mayock and Hajro lacked standing to seek or obtain relief on their "pattern and practice" FOIA claims. Mayock is a non-requestor and did not purport to represent any current FOIA requestor in bringing this suit. Under controlling Supreme Court precedent, as a non-requestor, Mayock lacks standing to sue on his own behalf or on behalf of future FOIA clients who may file FOIA requests in the future. Hajro lacks standing because there was no showing of significant likelihood that he will ever again have any need to file a FOIA request for his alien registration file, the type of request filed here. Indeed, Hajro became a naturalized U.S. citizen while this case was pending. Plaintiffs have also failed to identify any discrete USCIS "policy" that resulted in delay and that could justify equitable relief.

4. The relief awarded by the district court in its October 13, 2011 summary judgment order, as reiterated in its May 7, 2012 order, can be read as constituting a nationwide injunction as to future parties and future claims of any person making FOIA request for an alien registration file. Thus read, the relief would be unwarranted as a matter of law. Such relief would destroy the careful remedial

scheme set out by Congress to remedy FOIA delays and would impermissibly depart from underlying equitable principles that limit any equitable relief to the controversy and parties actually before the court.

5.  The fee award should be vacated and remanded in light of this Court's decision on the merits.  The merits decision will likely alter the scope of the success enjoyed by plaintiffs and thus necessarily alter the district court's assessment of the permissibility of fees.  In particular, the Court should remand for the district court to reconsider, in light of this Court's merits decision, whether FOIA fees may be awarded on any FOIA and non-FOIA claims that may survive after a merits decision by the Court.

## ARGUMENT

## I.    THE STANDARD OF REVIEW

The issues presented on this appeal are legal and thus the standard of review is de novo.  See *Prudential Locations LLC v. HUD*, 739 F.3d 424, 429 (9th Cir. 2013) ("'[A] two-step standard of review applies to summary judgment in FOIA cases.  The court first determines under a de novo standard whether an adequate factual basis exists to support the district court's decisions.  If an adequate factual basis exists, then the district court's conclusions of fact are reviewed for clear error, while legal rulings . . . are reviewed de novo.'"), quoting *Lane v. Dep't of Interior*,

- 15 -

523 F.3d 1128, 1135 (9th Cir. 2008). Similarly, "[t]he existence of subject matter jurisdiction is a question of law reviewed de novo." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1153 (9th Cir. 1998). "An award of attorney fees is reviewed for an abuse of discretion; whether the district court applied the correct legal standard is reviewed de novo." *Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 613-14 (9th Cir. 2009), citing *Childress v. Darby Lumber, Inc.,* 357 F.3d 1000, 1011 (9th Cir. 2004).

## II. THIS COURT HAS JURISDICTION IN NO. 11-17948

As noted above, the district court entered an order granting partial summary judgment to plaintiffs on October 13, 2011. Because that order, on its face, could be read to grant injunctive relief (RE 35), the government filed a Notice of Appeal from that Order on December 12, 2011. The district court issued its final injunctive order on May 7, 2012. Relying on Rule 4(a)(2), FRAP, the government did not file a new notice of appeal from that May 7, 2012 order. In its January 6, 2014 order, this Court has requested the government to address whether "more than a ministerial task remained" when the notice of appeal from the district court's October 13, 2011 amended order was filed.

The Court's show cause order cites *Kennedy v. Applause, Inc*., 90 F.3d 1477, 1483 (9th Cir. 1996), and that case, in turn, refers to Rule 4(a)(2), FRAP,

concerning the effect of a premature notice of appeal.  Rule 4(a)(2) states that "[a] notice of appeal filed after the court announces a decision or order, but before the entry of the judgment or order is treated as filed on the date of and after the entry." Rule 4(a)(2) is satisfied here and this Court therefore has jurisdiction over this appeal.

First, the district court's May 7, 2012 order was "ministerial."  The May 7, 2012 injunctive order provided first that USCIS comply with the time requirements of 5 U.S.C. §552(a)(6)(A)(i),(ii) and issue the written notice mandated by 5 U.S.C. §552(a)(6)(B) "to a requester if an extension of an additional ten business days is needed due to 'unusual circumstances.'"  That injunctive relief is but a copy of the same injunctive relief granted by the district court in its October 13, 2011 summary judgment order where the court specifically stated that ""IT IS FURTHER ORDERED that partial summary judgment is GRANTED in favor of Plaintiffs on Plaintiffs' claims for injunctive relief requiring USCIS to: 1) provide a copy of a requestor's file within the twenty-day time limit mandated by 5 U.S.C. §552(a)(6)(A); and 2) give the written notice mandated by 5 U.S.C. §552(a)(6)(B) if an extension of time is needed due to 'unusual circumstances.'"  Indeed, the October order contemplated a stipulated "form of injunction" to implement the

relief it had already granted in its merits order, thus indicating that the district court itself viewed the "form of injunction" to be a ministerial act. (RE 35).

Similarly, in the May 7, 2012 order, the court ordered specific enforcement of the Mayock Agreement, ordering that that USCIS "shall follow, implement, and execute the terms of the 1992 Mayock Settlement Agreement." That relief likewise was in furtherance of the district court's October 2011 order, in which the court specifically granted plaintiffs' demand for "enforcement of the 1992 Settlement Agreement." (RE 61). The May 7, 2012 order did no more than that.

The May 7, 2012 order was likewise in furtherance of the court's October 13, 2011 order where the court stated that "[i]njunctive relief is warranted in order to remedy a pattern and practice of FOIA violations by an agency where there is 'a probability that alleged illegal conduct will recur in the future.'" The violations listed in the May 7, 2012 order are the very same pattern and practice violations on which plaintiff Hajro prevailed in the October 13, 2011 summary judgment order.

Second, application of Rule 4(a)(2) to preserve this Court's jurisdiction is mandated by the underlying purposes of the Rule, precedent and common sense. The underlying purpose of Rule 4(a)(2) is to preserve appellate jurisdiction, not defeat it. That purpose was stressed by the Supreme Court in its controlling decision in *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.,* 498 U.S. 269, 275

- 18 -

(1991). Indeed, this case squarely falls within the fact pattern present in *FirsTier*, which also involved such a summary judgment order that disposed of all claims of all parties. Specifically, in *FirsTier*, the Supreme Court found that the premature notice of appeal was sufficient even though the district court, when it made its oral ruling, had requested that the defendant submit proposed findings of fact and conclusions of law, invited the plaintiff to make any appropriate objections, and indicated that the court would then enter its own findings and conclusions. (Id. at 271). Even though much remained to be done, the Supreme Court nonetheless had no difficulty in holding that Rule 4(a)(2) applied to sustain appellate jurisdiction over the district court's eventual entry of a final judgment.

Here, the district court had actually done far more in its October 13, 2011 summary judgment order than the district court had done in *FirsTier*. In this case the court did not issue a mere oral ruling, but filed its fully completed findings of fact and conclusions of law, complete with remedial orders. (RE 35). The court merely invited the parties to submit a stipulated "form of injunction" that implemented the relief that the court *had already granted* in its order granting summary judgment.[4/] Such a summary judgment order bears no resemblance to the

---

[4/] It is irrelevant that this case involves an injunctive "order" rather than a Rule 58 final judgment, as the Rule expressly encompasses notices filed "before the entry of the judgment *or order*." (Emphasis added). An entry of judgment under Rule 58 and a final "order" granting injunctive relief are both types of appealable final

type of clearly interlocutory orders identified in *FirsTier* as outside the scope of

Rule 4(a)(2).  See *FirsTier*, 498 U.S. at 276 (noting that Rule 4(a)(2) would not

apply to sanctions orders and discovery rulings).

     *FirsTier* makes clear that the appropriate inquiry is not whether actions

remain to be done in district court.  By definition, actions *always* remain to be done

in every case in which Rule 4(a)(2) could be applied.  Rather, the inquiry is an

objective one and focuses on whether the nonfinal decision from which an appeal

was filed "would be appealable if immediately followed by the entry of judgment"

(or an otherwise appealable order).  *FirsTier*, 498 U.S. at 276.  See *Capitol

Sprinkler Inspection, Inc. v. Guest Services, Inc*., 630 F.3d 217, 223 (D.C. Cir.

2011) (applying an objective standard to permit an appeal under Rule 4(a)(2),

regardless of the subjective reasonableness of counsel in filing the notice of

appeal); *Outlaw v. Airtech Air Conditioning and Heating, Inc.*, 412 F.3d 156, 161-

62 (D.C. Cir. 2005) (Roberts, J.).  Accord *Brown v. Columbia Sussex Corp*., 664

F.3d 182, 190 (7th Cir. 2011).

     This Court has applied Rule 4(a)(2) in that manner, holding, for example,

that a notice is premature where the appeal was filed from a Magistrate's order that

---

decisions under 28 U.S.C. §1291.  As then-Judge Roberts stated, "nothing in
*FirsTier* requires that the hypothetical judgment considered in applying its test be
the same type as the one actually entered."  *Outlaw v. Airtech Air Conditioning and
Heating, Inc.*, 412 F.3d 156, 162 (D.C. Cir. 2005) (citing cases).

was subject to review by the district court judge. *Demorest v. Ryan*, 156 Fed. Appx. 931 (9th Cir. 2005); *Serine v. Peterson*, 989 F.2d 371, 372–73 (9th Cir. 1993). Such magistrate orders could never be appealable to the court of appeals as they can never be followed immediately by the entry of an appealable judgment. The same is true of other types of orders, such as discovery orders or non-final orders that could not be appealable if followed immediately by the entry of judgment. See *Kendall v. Homestead Dev. Co.,* 17 F.3d 291, 294 (9th Cir. 1994) (holding that Rule 4(a)(2) did not apply when the notice of appeal was filed before the matter of prejudgment interest was decided).

Such circumstances do not obtain here. This case was assigned to the Magistrate by consent of the parties under 28 U.S.C. §636(c),[5] and thus the Magistrate's October 13, 2011 summary judgment order was not reviewable by a district court judge. The court's October order also disposed of all the claims of all the parties in an order that contained specific language that purported to grant the very injunctive relief that the court later repeated in its May 7, 2012 order. (RE 35). The district court's October 2011 summary judgment order would have become and, in fact, became appealable with the entry of what the district court

---

[5] See Docket #24 (Sept. 04, 2008) (providing that the parties "voluntarily consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and order the entry of a final judgment.").

characterized as "a form of injunction" that recorded the relief that already had been granted in the order on summary judgment. In such circumstances, the entry of that "form of injunction" was a "ministerial" act in every meaningful sense. See *A. Bauer Mechanical, Inc. v. Joint Arbitration Bd.*, 562 F.3d 784, 789 (7th Cir. 2009) (the ruling "essentially foreclosed any relief on Bauer's complaint; therefore Bauer's belief that the order also disposed of its claims was reasonable"), citing *Garwood Packaging, Inc. v. Allen & Co., Inc.* 378 F.3d 698, 701 (7th Cir. 2004) ("once the decision is announced, a premature notice of appeal lingers until the final decision is entered" even though the order in fact had not disposed of all the claims of all the parties at the time the notice was filed).

Allowing appeal in this case would be consistent with the decisions of other courts of appeals which have construed Rule 4(a)(2) generously to allow an appeal, consistent with the underlying jurisdiction-preserving purposes of the Rule. The Third Circuit, for example, applies Rule 4(a)(2) to allow the "premature notice of appeal to ripen in cases where the adverse party was not prejudiced by the premature filing and where we have yet to adjudicate the appeal." *Khan v. AG of the United States*, 691 F.3d 488, 493 (3d Cir. 2012), citing cases. Similarly, the D.C. Circuit and several other circuits apply Rule 4(a)(2) to preserve jurisdiction over an order that could have become final with the mere entry of an order under

Rule 54(b), FRCP, without regard to the subjective reasonableness of counsel's

decision to file the premature notice of appeal. See *Outlaw*, 412 F.3d at 158

(sustaining jurisdiction because "the nonfinal decision would have been appealable

if followed by entry of judgment under Rule of Civil Procedure 54(b)"). Accord

*Brown*, 664 F.3d at 189; *In re Bryson*, 406 F.3d 284, 288 (4th Cir. 2005); *Swope v.*

*Columbian Chemicals Co.*, 281 F.3d 185, 191–92 (5th Cir. 2002); *Clausen v.*

*Sea–3, Inc.*, 21 F.3d 1181, 1187 (1st Cir. 1994).

Finally, plaintiffs cannot reasonably claim prejudice in this case. See

*Brown*, 664 F.3d at 189 ("similar to *FirsTier* is the lack of any prejudice to

[appellee]"). Yet, refusing to entertain this appeal would greatly prejudice the U.S.

Department of Homeland Security and USCIS, which are charged with the vital

mission of protecting the integrity of our Nation's immigration system and its

borders. As set forth below, this appeal presents issues of equity, standing, and

jurisdiction that are both legally substantial and highly important to this agency.

Specifically, as discussed *infra*, leaving the district court's judgment in place could

expose this agency to potential contempt proceedings on claims of violations of

what could be construed to be a nationwide order extending far beyond the parties

and controversy at issue in this case. As also detailed *infra*, that USCIS was late

responding to Hajro's FOIA requests, or even has been late in responding to other

- 23 -

prior requests, does not, without much more, provide a sufficient reason to subject these agency officials to a continuing risk of time-consuming, attention-diverting, contempt proceedings.

## III.  THE DISTRICT COURT LACKED SUBJECT MATTER JURISDICTION TO ENFORCE THE MAYOCK AGREEMENT

### A.  The Mayock Agreement Is a Contract

The district court in the original *Mayock* proceedings did not enter any order that either purported to adopt the 1992 Mayock Agreement or purport to retain jurisdiction to enforce the agreement.[6/]  The docket sheet from those proceedings merely indicates that "the parties have advised the court that they have agreed to a settlement; it is hereby ordered that this action be dismissed with prejudice; if any party certifies to the court within 60 days that the settlement has not been delivered, the foregoing order will be vacated and this action will be restored to the calendar."  (Dkt # 197) (Addendum).  The district court's April 28, 1992 dismissal order parrots that language.  (Addendum).

_____

[6/] The government acknowledges that it did not raise this jurisdictional issue in district court.  That failure, however, is legally irrelevant, as jurisdiction of the district court can be raised at any time, even on appeal.  See, e.g., *Kontrick v. Ryan*, 540 U.S. 443, 455-456 (2004); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).  Indeed, this Court has an independent duty to address jurisdiction regardless of whether it has been raised by the parties.  See, e.g., *Munoz v. Mabus*, 630 F.3d 856, 860 (9th Cir. 2010).

- 24 -

In fact, the actual agreement was not filed with the district court until a month later, on May 27, 1992 (Dkt # 98, duplicated at #199) (Addendum), and the district court docket does not reflect any other entry on the docket other than those administrative items associated with recording the dismissal by this Court of the two pending appeals noted in the Agreement. (Dkt ## 200, 201) (Addendum). The May 27, 1992 filing was captioned merely as a "Notice of Filing of Settlement Agreement" and the total text of the filing consisted of one sentence, stating "Plaintiff hereby submits for filing the final Settlement Agreement disposing of all issues in this case." (Addendum). Nothing in that filing can be reasonably construed as calling for the district court to incorporate the Agreement in an order and the court did not do so.

In such circumstances, the Mayock Agreement is simply a contract and nothing more. The controlling precedent on this question is *Kokkonen v. Guardian Life Ins. Cop. of America*, 511 U.S. 375 (1994). *Kokkonen* held that a suit to enforce provisions of a settlement agreement requires its own jurisdictional basis, separate from the court's jurisdiction over the underlying dispute. (Id. at 378). The Supreme Court reasoned that a district court would not have "ancillary jurisdiction" over such a claim (id. at 380), concluding that the prerequisites for such jurisdiction required that the terms of the settlement agreement either be incorporated into the court's dismissal order or include a provision under which the

- 25 -

court had expressly retained enforcement jurisdiction. (Id. at 381-82). As the Court stated, "we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract if the parties agree. Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." (Id.). See also *Buckhannon Bd. & Care Home, Inc. v. West Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 n.7 (2001).

The Mayock Agreement does not satisfy the conditions for the exercise of continuing district court jurisdiction set forth in *Kokkonen*. As noted, the Agreement was not embodied in the district court's dismissal order, nor could it be, as the Agreement was not even filed until May 27, 1992, well after the district court had dismissed the case on April 28, 1992. It is, of course, well established that "the burden of establishing [jurisdiction] rests upon the party asserting jurisdiction," *Kokkonen*, 511 U.S. at 377, and plaintiffs made no attempt to identify any basis for jurisdiction other than the existence of the 1992 settlement contract in *Mayock*. See also *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

Without such an adoption or incorporation or retention of jurisdiction, the Mayock Agreement is a mere contract between the parties, and, under *Kokkonen*, the district court lacks jurisdiction over a breach of settlement agreement contract

- 26 -

action. See also *Adam Technologies Intern. S.A. de C.V. v. Sutherland Global Services, Inc*., 729 F.3d 443, 454 (5th Cir. 2013) ("We further held that under *Kokkenen* and its progeny, in order for the district court to retain ancillary jurisdiction to enforce the terms of the parties' settlement agreement, the dismissal order must clearly indicate the court's intent to make the terms of the settlement agreement part of its dismissal order."), citing *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 433 (5th Cir. 2002). See also *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 464 (5th Cir. 2010); *Lindstrom v. United States*, 510 F.3d 1191 (10th Cir. 2007).

We acknowledge, of course, that the Mayock Agreement does indicate that the parties contemplated that any breach of contract action could be brought in district court. See Agreement ¶10. However, that intent is simply irrelevant. The parties may not, by agreement, accord jurisdiction, as the district court has only that jurisdiction "authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. See also *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) ("The parties have no power to confer jurisdiction on the district court by agreement or consent."). See also *SmallBizPros*, 618 F.3d at 464 n.4; *Shaffer v. Veneman*, 325 F.3d 370, 373 (D.C. Cir. 2003).

In executing the Agreement, the parties were probably proceeding under Ninth Circuit law as it then existed in 1992, prior to the Supreme Court's 1994 decision in *Kokkonen*. Under then-existing Ninth Circuit law, the district court had "inherent authority" to enforce a settlement agreement. See *Kokkenen v. Guardian Life Ins. Co. of America*, 993 F.2d 883 (9th Cir.1993), *reversed*, 511 U.S. 375 (1994). See also *Wilkinson v. FBI*, 922 F.2d 555, 557 (9th Cir. 1991) (holding that the district court had jurisdiction over enforcement actions "under its inherent supervisory power"). The Supreme Court expressly reversed this Court's application of that rule in *Kokkonen*. (511 U.S. at 377). That reversal leaves no room for any assertion of inherent authority to enforce a settlement agreement. Accordingly, the district court's orders enforcing the Mayock Agreement must be reversed for lack of jurisdiction.

### B. Plaintiffs Have a Contractual Remedy Only Under The Tucker Act in the Court of Federal Claims

A plaintiff in the position of Mayock is not necessarily without a remedy. A breach-of-contact action by such a plaintiff could, conceivably, be brought under the Tucker Act in the Court of Federal Claims. See 28 U.S.C. §1491(a)(1) (providing that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States"). Indeed, the Federal Circuit held as much

in *Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011), where the court held that a damages action under the Tucker Act is available to an individual claiming government breach of a private settlement of a Title VII claim.  See also *VanDesande v. United States*, 673 F.3d 1342 (Fed. Cir. 2012) (holding that a consent decree could also be enforced as a contract under the Tucker Act); *Franklin-Mason v. Mabus*, --- F.3d ----, 2014 WL 903135 at 3 (D.C. Cir. 2014) (following *Holmes* and *VanDesande*); *Cunningham v. United States*, --- F.3d ----, 2014 WL 1377792 (Fed. Cir. 2014) (same).[7]

The Tucker Act remedy also precludes a suit under the APA.  See, e.g., *Rothe Development, Inc. v. Dept. of Defense*, 666 F.3d 336, 339 (5th Cir. 2011) (holding that "the Tucker Act confers exclusive jurisdiction over this action with the Court of Federal Claims, and the APA does not waive sovereign immunity as to Rothe's claims."); *Shaffer v. Veneman*, 325 F.3d 370, 373 (D.C. Cir. 2003)

---

[7] It is well established that injunctive relief (i.e., specific performance) is not available in a breach-of-contract action under the Tucker Act.  See *United States v. Jones*, 131 U.S. 1 (1889).  See also *Richardson v. Morris*, 409 U.S. 464, 465 (1973) ( per curiam ); *Lee v. Thornton*, 420 U.S. 139, 140 (1975) ( per curiam ) (Tucker Act jurisdiction empowers courts "to award damages but not to grant injunctive or declaratory relief"); *United States v. King*, 395 U.S. 1, 3 (1969) (relief the Claims Court can give is "limited to actual, presently due money damages from the United States").  See also *United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 931 (9th Cir. 2009); *Holmes,* 657 F.3d at 1315 (noting that it "was proper for the court to require a demonstration that the agreements could fairly be interpreted as contemplating money damages in the event of breach.").

("'[T]his Court and others have interpreted the Tucker Act as providing the exclusive remedy for contract claims against the government, at least vis a vis the APA,'"), quoting *Transohio Savs. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992); *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1484-86 (9th Cir. 1985)). See also *Sharp v. Weinberger*, 798 F.2d 1521, 1523-24 (D.C. Cir. 1986) (Scalia, J.); *Suburban Mortg. Associates, Inc. v. Dept. of Housing and Urban Development*, 480 F.3d 1116, 1127-28 (Fed. Cir. 2007). In short, there is no conceivable jurisdictional basis for the district court to order specific enforcement of the Mayock Agreement.

## IV.   PLAINTIFFS MAY NOT OBTAIN A "PATTERN AND PRACTICE" INJUNCTION

The district court erred in holding that plaintiffs had legal standing to bring and obtain relief for a "pattern and practice" FOIA claim. As more fully set forth below, such relief was inappropriate in this case under either FOIA or the APA.

### A.   The Scope of FOIA Relief

The district court is empowered by FOIA only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. §552(a)(4)(B). Under this express language, the right of action and relief under FOIA is limited to a claim for documents that have been withheld. The Supreme Court has thus held that "federal

jurisdiction [to order disclosure] is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980). Accordingly, the withholding of documents is an "indispensible prerequisite" to FOIA jurisdiction. (Id. at 155). This means that "[u]nless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). See *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996) (production moots the FOIA case); *Spurlock v. FBI*, 69 F.3d 1010, 1015 (9th Cir. 1995) (same).

Accordingly, the general rule in this Circuit and other circuits is that production of the documents moots a FOIA case, as there is no longer any "withholding" of "agency records" to "enjoin." See, e.g., *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("if we are convinced that appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA."); *Papa v. United States*, 281 F.3d 1004, 1013 & n.42 (9th Cir. 2002) (same); *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986). See also *Cornucopia Institute v. Dept. of Agriculture*, 560 F.3d 673, 675 (7th Cir. 2009) ("we have held that '[o]nce the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot.'"), quoting *Walsh v. VA*, 400 F.3d 535, 536 (7th Cir. 2005).

- 31 -

These "indispensable" elements to a FOIA suit are conditions to the FOIA waiver of sovereign immunity and, as such, must be strictly construed and applied. See, e.g., *Lane v. Peña*, 518 U.S. 187, 192 (1996) (reiterating that a waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign"); *Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 617 (9th Cir. 2009) (applying sovereign immunity strict construction principles to limit the scope of FOIA fee awards).

## B.     A FOIA Pattern and Practice Claim

The courts have recognized a narrow exception to this mootness principle by holding that a "pattern and practice" claim is cognizable under FOIA.  The leading case is *Payne Enterprises v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). There, the D.C. Circuit held that while providing the requested documents to a requestor is ordinarily sufficient to moot a FOIA case, such a furnishing of documents does not necessarily moot a claim made by a requestor that the agency has engaged in a pattern and practice of violating FOIA if such a practice "will impair the party's lawful access to information in the future."  See *Payne*, 837 F.2d at 491.  That holding was reaffirmed recently by the D.C. Circuit in *Newport Aeronautical Sales v. Department of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012).  This Court is in accord.  See *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982)

- 32 -

(citation omitted) ("In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate ... to bar future violations that are likely to occur.").[8/]

However, a plaintiff making such a claim must still establish standing to do so under Article III, *viz.*, plaintiff must allege and prove that it is likely that the plaintiff will again be harmed by the policy that led to the initial denial of documents. See *National Whistleblower Center v. Department of Health and Human Services,* 839 F. Supp. 2d 40 (D.D.C. 2012). Standing is jurisdictional and the burden is on plaintiff to demonstrate it at all stages of the proceeding and for every type of relief. See *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (the plaintiff "bears the burden of showing that he has standing for each type of relief sought.").

In particular, plaintiff must show an "injury in fact" which is an invasion of a legally protected interest that is concrete and particularized and "actual or imminent, not conjectural or hypothetical." *American Library Association v. FCC*, 401 F.3d 489, 492-93 (D.C. Cir. 2005) (citation and internal quotation marks

---

[8/] In its prior *Mayock* decision in 1991, this Court noted that Mayock had brought a pattern and practice claim, but the Court did not address the merits of that claim beyond noting that Mayock's standing to bring a pattern and practice claim had been sustained by the district court. *Mayock*, 938 F.2d at 1007 n.1.

omitted).  See also *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 81

(D.C. Cir. 2012) (same).  A threatened injury must be "certainly impending" to

constitute an injury in fact, and "[a]llegations of possible future injury do not

satisfy the requirements of Art[icle] III."  *Whitmore v. Arkansas*, 495 U.S. 149, 158

(1990).  See also *NB ex rel Peacock*, 682 F.3d at 82 ("plaintiffs must show that

they "suffer[ ] an ongoing injury or face[ ] an immediate threat of injury."), quoting

*Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (brackets the Court's);

*NTEU v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

### 1.     Plaintiff Mayock lacks standing to bring a FOIA claim

Non-requestors, such as plaintiff Mayock in this case, simply do not have

such standing to bring any FOIA claim, much less a pattern and practice claim,

because, by definition, the agency has never "withheld" any agency record from a

non-requestor.  The three "indispensible prerequisite" elements of a FOIA case

identified in *Kissinger* are simply absent as to such a non-requestor.  Accordingly,

a non-requestor, such as Mayock in this case, simply does not have the right to file

suit seeking FOIA relief.

This is a fundamental limitation on FOIA jurisdiction.  It is one thing to

allow a party properly in court on a FOIA claim challenging the withholding of

specific documents to seek recovery, including recovery under a pattern and

practice theory, where he can show an actual withholding or the reasonable prospect of future injury from a specific practice that resulted in the original withholding. It is quite another thing to allow a non-requestor to come into court without the jurisdictional basis provided by a specific request for documents that had been improperly withheld. If such suits were allowed, persons could become free-roving FOIA enforcers without bothering to make even so much as a single request or otherwise comply with the elements of FOIA district court jurisdiction.

These principles preclude standing for plaintiff Mayock. The district court noted that this Court in the prior *Mayock* appeal had not questioned Mayock's standing to continue the suit in his "own name" after the requested documents had been supplied to the clients he represented in that suit. (RE 46). Yet, the Court in that case did not address the issue and thus its opinion is not precedent on that point. See, e.g., *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Galam v. Carmel (In re Larry's Apartment, L.L.C.)*, 249 F.3d 832, 839 (9th Cir. 2001).

The district court opined that "[t]he fact that Mayock continues to work as an immigration attorney who sometimes needs to request copies of his client's

- 35 -

alien registration files pursuant to FOIA is as sufficient now as it was over twenty years ago when he first filed suit against INS to seek enforcement of FOIA's timing requirements." (RE 46). Yet, that reasoning impermissibly extends this Court's *Mayock* decision. In that case, Mayock sued on behalf of existing clients, whose requests were part of the suit as originally filed. See *Mayock*, 938 F.2d at 1006 ("James R. Mayock, an immigration attorney, originally brought suit on behalf of aliens he represented. The issues regarding those plaintiffs were resolved; Mayock then proceeded on his own behalf."); *Mayock*, 714 F. Supp. at 1560 ("In earlier proceedings in this case, the specific FOIA requests were resolved by the parties and by the court. This case has become a 'pattern and practice' case."). No such situation is presented here, as Mayock is a named plaintiff and does not purport to bring suit "on behalf" of any client who had made a specific FOIA request. (RE 80-82).

Fundamentally, there is a controlling distinction between an attorney suing on behalf of existing clients and an attorney suing on behalf of prospective clients. In *Kowalski v. Tesmer*, 543 U.S. 125, 134 (2004), the Supreme Court assumed (without deciding) that attorneys had standing to represent the rights of existing clients, but held attorneys did not have standing to represent the rights of future clients. As the Court stated, "[w]e agree with the dissenting opinion in the Court

of Appeals [of Michigan] that 'it would be a short step from the ... grant of third-party standing in this case to a holding that lawyers generally have third-party standing to bring in court the claims of future unascertained clients.'" (Id.). See also *Conn v. Gabbert*, 526 U.S. 286, 292-93 (1999) (holding that an attorney lacked standing to raise issue of infringement of client's alleged right to have attorney present outside grand jury room).

Accordingly, to the extent that this Court's prior *Mayock* decision can be read as endorsing attorney standing, that holding has been limited by the Supreme Court's subsequent decision in *Kowalski*. Here, there has been no showing that Mayock's future clients will be unable to challenge or otherwise be "hindered" in seeking relief as to any USCIS policy. See *Kowalski,* 543 U.S. at 131-32 (stating that, in order to have standing, attorneys must show that the third-parties would suffer a "hinderance" in protecting their own rights). Therefore, it is not necessary to accord Mayock standing to assert their rights in advance. When and if such documents are withheld, those clients might have standing to assert a challenge to an agency policy. But at least then the court will have the benefit of a concrete factual situation in which to judge the agency's practices rather than the purely hypothetical situations presented by Mayock's potential future clients.

Put differently, the possible FOIA claims of Mayock's potential future clients are simply not ripe for adjudication. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States,* 523 U.S. 296, 300 (1998), quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985). See also *Chlorine Institute, Inc. v. Federal R.R. Admin*., 718 F.3d 922, 927 (D.C. Cir. 2013) ("The ripeness doctrine is 'designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties'"), quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003).

### 2. Plaintiff Hajro lacks standing to recover on a pattern and practice claim under FOIA

Plaintiff Hajro, of course, is in a different posture than plaintiff Mayock, as Hajro is at least a requestor and thus could, conceivably, have standing to bring a proper "pattern and practice" claim in invoking the district court's FOIA jurisdiction. However, plaintiff Hajro has never established the essential element of standing, *viz.*, that he again will likely be subject to the "pattern and practice" of

USCIS alleged here.  The district court should have, therefore, dismissed Hajro's pattern and practice claim for lack of standing.

First, it is well established that a pattern and practice claim cannot be based solely on a single denial of documents by the agency.  See *Muttitt v. United States Central Command,* 813 F. Supp. 2d 221 (D.D.C. 2011) ("an allegation of a single FOIA violation is insufficient as a matter of law to state a claim for relief based on a policy, pattern, or practice of violating FOIA"), citing *Pub. Emps. for Envtl. Responsibility v. Dept. of Interior*, 2006 WL 3422484, at *9 (D.D.C. 2006) (denying injunctive relief because "a sole  incident of delay is insufficient to convince this Court that there exists a 'reasonable expectation that the alleged violation will recur'").  Here, the district court held that principle did not apply because a pattern and practice was supposedly established by Mayock's declaration and the declarations submitted by 26 other immigration attorneys in San Francisco. (RE 47).  The district court also noted that Hajro had shown "two independent, alleged violations are at issue based on USCIS's delayed response to Hajro's FOIA request -- the failure to provide a response within twenty days and the failure to provide·written notice setting forth the 'unusual circumstances' that would qualify USCIS for a ten-day extension of time.  Mayock and the other attorney declarants

similarly testify to USCIS's persistent failures with respect to both requirements." (Id.).

These holdings are insufficient to sustain Hajro's standing to obtain prospective injunctive relief on plaintiffs' pattern and practice claim. First, as a general matter, Hajro simply does not have standing to challenge the withholding of documents to other persons not before the court. A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 490 U.S. 490, 499 (1975); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263 (1977) ("In the ordinary case, a party is denied standing to assert the rights of third persons"); *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (a plaintiff ordinarily "'cannot rest his claim to relief on the legal rights or interests of third parties'") (citation omitted).

Second, the pattern and practice case law expressly recognizes that a pattern and practice claim is necessarily confined to those situations where the plaintiff can show that "an agency policy or practice *will impair the party's* lawful access to information *in the future*." *Payne*, 837 F.2d at 491. (Emphasis added). That test necessarily requires an inquiry into the likelihood that Hajro *himself* will again be subjected to USCIS's alleged pattern and practice. See also *Newport*, 684 F.3d at

- 40 -

164 (noting that the pattern and practice plaintiff in that case "has also shown that *it will suffer continuing injury* from this allegedly unlawful policy") (emphasis added); *Long*, 693 F.2d at 909 ("district court may consider injunctive relief where appropriate ... to bar future violations *that are likely to occur*") (emphasis added).

Third, requiring Hajro to show that he is individually threatened with such violations in the future reflects the general rule that standing to seek an injunction is limited by the scope of the threatened injury. *Lewis v. Casey*, 518 U.S. 343, 357-360 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Los Angeles v. Lyons*, 461 U.S. 95, 105-07, n.7 (1983) ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers."). As the Supreme Court stated in *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 222 (1974), the requirement of injury in fact "insures the framing of relief no broader than required by the precise facts." In this regard, "[i]t is the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Lyons*, 461 U.S. at 107, n.8.

Here, plaintiff Hajro cannot meet these requirements. The district court did not find, and there is no basis for a finding, that Hajro will again be seeking his

**- 41 -**

registration file from USCIS in a FOIA request. Indeed, Hajro successfully challenged USCIS's denial of naturalization and has since been naturalized as a U.S. citizen. See *Hajro v. Barrett*, 849 F. Supp. 2d 945 (N.D. Cal. 2012).[9/] That issue has thus been resolved in Hajro's favor. There is, consequently, no likelihood of additional naturalization proceedings as to Hajro or, for that matter, any immigration proceeding as to which Hajro would have any need of his registration file – he is no longer an alien. See *Lyons*, 461 U.S. at 106 n.7 ("Lyons would have to credibly allege that he faced a realistic threat from the future application of the City's policy."). Compare *Natural Resources Defense Council v. EPA,* 735 F.3d 873, 878-79 (9th Cir. 2013) (distinguishing *Lyons* by reference to the likelihood of the risk of future harm).

Accordingly, Hajro lacks standing to recover on a pattern and practice claim in this case. See, e.g., *Walsh v. VA*, 400 F.3d 535, 537 (7th Cir. 2005) ("The theoretical possibility that Walsh might again have to wait for requested records is not enough to keep his claim alive."); *Quick v. Dept. of Commerce, Nat. Institute of Standards and Technology*, 775 F. Supp. 2d 174, 187 (D.D.C. 2011) ("to the extent Quick seeks to establish his standing to pursue his 'pattern or practice' claim by his

---

[9/] USCIS records show that Hajro became a naturalized U.S. citizen on July 25, 2012.

passing allegation that he 'plans to file additional FOIA requests to the NIST in the future,' the Supreme Court has foreclosed that route: '[s]uch "some day" intentions — without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the [requisite] "actual or imminent" injury.'"), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

### C.   Plaintiffs Have Failed To Show A Discrete Policy or Practice Necessary For A Pattern and Practice Claim

An essential predicate to a pattern and practice claim is a showing that the defendant agency has withheld documents pursuant to a discrete policy or practice that may be identified and that threatens to cause the FOIA plaintiff continuing injury.  In this regard, judicial remedies in a FOIA pattern and practice case are subject to the same limits as suits under the APA.[10]  Here, those limitations make plain that plaintiffs here may not obtain injunctive relief on their pattern and practice FOIA claims.

---

[10]  FOIA is the exclusive remedy for challenging the withholding of documents. "[F]ederal courts lack jurisdiction over APA challenges whenever Congress has provided another 'adequate remedy.'"  *Brem–Air Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998) (quoting 5 U.S.C. §704).  See also *Walsh v. VA*, 400 F.3d 535, 538 (7th Cir. 2005) (holding that APA did not apply to keep plaintiff's FOIA suit alive after the production had mooted the FOIA claims).

In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004), the Supreme Court held that "a [failure to act] claim under [5 U.S.C. ]§706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is required to take." (Emphasis the Court's). The Supreme Court explained that "[t]he limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)." (Id.).[11/] While *Norton* addressed APA claims, the limits on judicial power recognized in *Norton* also apply to limit the scope of judicial remedies available for a "pattern and practice" suit under FOIA. See, e.g., *Del Monte Fresh Produce N.A., Inc. v. United States*, 706 F. Supp. 2d 116 (D.D.C. 2010).

Specifically, after *Norton*, pattern and practice claims under *Payne* should be confined to cases involving "repeated denial of Freedom of Information Act requests based on the invocation of inapplicable statutory exemptions rather than delay of an action over which the agency had discretion." *Del Monte*, 706 F. Supp. 2d at 120. For example, precisely such a policy was present in *Newport*, where the FOIA plaintiff challenged a specific Air Force Directive that applied an Exemption

---

[11/] These limits under *Norton* are jurisdictional. *Siskiyou Reg'l Educ. Project v. United States Forest Serv*., 565 F.3d 545, 554 (9th Cir. 2009).

**- 44 -**

to limit the release of technical data to "'qualified U.S. contractors" for "legitimate business purposes." *Newport*, 364 F.3d at 366. The D.C. Circuit applied *Payne* to sustain a pattern and practice challenge to that agency directive, holding that the directive constituted "'an agency policy or practice [that] will impair the party's lawful access to information in the future.'" *Newport*, 684 F.3d at 164, quoting *Payne* 837 F.2d at 491. The court rejected the argument that *Payne* had been "superseded" by *Tax Analysts*, holding that "*Tax Analysts* did not involve a challenge to an agency's ongoing FOIA policy." (Id. at 164 n.1).

Here, the district court never found any such "discrete" or "ongoing FOIA policy." Rather, the court found merely that USCIS is "routinely" late in providing alien registration files to requestors. (RE 44). Under *Norton*, being routinely late is not a "discrete" policy and practice, as that outcome could be due to a host of reasons, including simply the lack of resources to deal with the sheer number of FOIA requests at any given point in time. Application of *Norton*, *Tax Analysts*, and *Newport* precludes broad, prospective injunctive relief that creates a risk of contempt proceedings in the absence of a discrete agency policy. See also *Cobell v. Norton*, 392 F.3d 461, 472 (D.C. Cir. 2004) ("the Court held initially in *Lujan* and again in *Southern Utah* that APA review was not available—even in the face of allegations of 'rampant' violations of law—for claims seeking 'wholesale

- 45 -

improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made'"), quoting *Lujan*, 497 U.S. at 891, brackets in original.

Indeed, a rule to the contrary would mean that reviewing courts would immerse themselves into the day-to-day administration of the agency, precisely the result barred in *Norton, Tax Analysts* and *Lujan*.  See *Norton*, 542 U.S. at 64 ("If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved -- which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out ... day-to-day agency management."); *In re Long-Distance Telephone Service Federal Excise Tax Refund Litigation,* --- F.3d ----, 2014 WL 1851911 at *3 (D.C. Cir. May 09, 2014).  The overriding principle is that courts should not take it upon themselves to oversee agency allocation of resources or pick and choose among competing agency priorities.  See *NLRB v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941); *Cobell*, 392 F.3d at 475.  The court's orders here violate these principles.

## IV.    THE DISTRICT COURT'S INJUNCTIVE RELIEF IS OVERBROAD

Here, broadly read, the remedial order at issue is not intended to remedy a specific withholding of specific documents "improperly withheld."  Rather, read

**- 46 -**

expansively, the order is designed to prevent such a withholding in the future in unspecified cases for unspecified FOIA complainants for unspecified records without regard to the reasons for the late production or failure to comply with FOIA deadlines. As detailed below, the district court lacks the power to enter such an order under FOIA or otherwise.

## A.      The Orders Go Beyond FOIA

First, the district court went beyond the statute in its injunctive relief set forth in both its order on summary judgment (RE 35) and its final May 7, 2012 injunction (RE 32-33). Section 552(a)(6)(A) requires that "[e]ach agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall-  (i) *determine* within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such deter-mination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination." In contrast, the district court's summary judgment order required USCIS to "*provide* a copy of a requestor's file within the twenty-day time limit mandated by 5 U.S.C. §552(a)(6)(A)." (RE 35) (emphasis added). See also May 7, 2012 Order at 2; RE 32 ("USCIS *shall provide a copy* of a requestor's alien registration file within the twenty-business-day time

limit mandated by 5 U.S.C. §552(a)(6)(A)(i).").  It is obvious that "determin[ing]" "whether to comply with such request" is different than actually "provid[ing]" a requestor with a fully processed registration file within 20 days.

This error and the very broad nature of this and other relief arguably granted by the district court dramatically undermines the remedial scheme that Congress has devised to encourage FOIA compliance while still permitting an agency to function.  First, under FOIA, a requestor must generally exhaust all administrative remedies prior to seeking judicial redress.  However, "if  an agency does not adhere to certain statutory timelines in responding to a FOIA request, the requestor is deemed by statute to have fulfilled the exhaustion requirement." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("*CREW*"), citing 5 U.S.C. §552(a)(6)(C)(i).

Congress also made it as easy as possible for plaintiffs to sue in other ways. Congress created four different venues including the District Court for the District of Columbia, as a court of universal venue.  See 5 U.S.C. §552(a)(4)(B).  Congress even modified the traditional "answer" time frame to the benefit of plaintiffs by giving agencies only 30 days to answer a complaint under the FOIA statute rather than the normal 60 days.  See 5 U.S.C. §552(a)(4)(C).  Congress also modified the FOIA attorney fee provisions in the 2007 Open Government Act, Pub. Law

110-175, 121 Stat. 2524 (2007), to reinstate the "catalyst" doctrine for attorney fee eligibility that existed prior to *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598 (2001). See 5 U.S.C. §552(a)(4)(E)(i). Another change made by the Open Government Act was to provide that FOIA attorneys fees awards are no longer paid from the Judgment Fund. See Pub. L. 110-175, 121 Stat. 2524 §4(b), 5 U.S.C. §552 Note. The scheme devised by Congress to remedy a failure to comply with the FOIA time periods is thus a quick lawsuit and greatly enhanced possibility of fees payable from the agency's own budget.

Congress nonetheless gave agencies who are sued for failure to comply with FOIA's time requirements an escape hatch through the "exceptional circum-stances" provision. If an agency can show that "exceptional circumstances" exist, "then so long as 'the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.'" 5 U.S.C. §552(a)(6)(C)(i). As the D.C. Circuit has noted, "[t]his scheme provides an incentive for agencies to move quickly but recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement." *CREW*, 711 F.3d at 189. The case law also makes clear that a FOIA suit does not mean that the requestor gets

preferential treatment. See *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615 (D.C. Cir. 1976). As this Court observed in *Fiduccia v. DOJ,* 185 F.3d 1035, 1040-41 (9th Cir. 1999), "[a]n automatic preference for no reason except the filing of a lawsuit would generate many pointless and burdensome lawsuits, so we have never adopted a rule of automatic preference." Accord *Exner v. FBI*, 542 F.2d 1121, 1122-23 (9th Cir. 1976).

This balance between the requestor's need for documents and the agency's need for additional time and fairness to other FOIA requestors is destroyed by the district court's orders in this case. Under the literal terms of the court's orders, any failure to timely provide documents to any such "requestor" could presumably be the basis of a contempt action. Such a suit for contempt would necessarily create an enormous potential for abuse as it could effectively mean that registration file requestors would secure a priority for their claims at the expense of all other types of FOIA claims submitted to USCIS. It would also leave no room for any district court proceedings under 5 U.S.C. §552(a)(6)(C)(i), to allow the agency "additional time to complete its review of the records" after suit is filed. By creating the prospect of contempt actions, the district court's order here adds a whole new set of potential "penalties" and incentives far different than that contemplated by Congress in crafting the statutory scheme.

- 50 -

### B.    Nationwide Injunctive Relief Would Be Improper

The perverse preferences and incentives created by the district court's orders are particularly apparent here where the district court used very broad injunctive language in both its October 13, 2011 and its May 7, 2012 orders.  The language used in those orders is not clear as to whether the relief is confined to the particular parties before the court or was intended to accord relief to all present and future requestors, nationwide.  However, the court's language and orders are, on their face, quite broad.  For example, the May 7, 2012 order commands the agency to obey and adhere to the Mayock Agreement, and the October 13, 2011 order enforced that Agreement at the request of Hajro, who was not even a party to that Agreement.  Similarly, other portions of the injunctive order in the October 13, 2011 summary judgment order and/or the May 7, 2012 order concerning the time period limitations refer to the "requestor" and "any FOIA appeal" and providing written notice to a "requestor" without apparent limitation to the parties or controversy before the court.  This language could be read as imposing nationwide requirements.

This Court should expressly reject any such broad equitable relief.  In *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 665 (9th Cir. 2011), this Court reversed a nationwide injunction and, in so holding, reaffirmed several

**- 51 -**

principles. First, the Court noted that "'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs' before the court." (Id.)(citation omitted). Second, this Court also reiterated that injunctions should be limited to only the named plaintiffs. (Id., citing *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification."). See also *Meinhold v. U.S. Dep't of Defense,* 34 F.3d 1469, 1480 (9th Cir. 1994) (district court erred in enjoining the defendant from improperly applying a regulation to all military personnel). Third, the Court also agreed that "nationwide injunctive relief may be inappropriate where a regulatory challenge involves important or difficult questions of law, which might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals." (Id.) (citation omitted). The Court thus concluded that a declaratory judgment and injunction limited to the particular plaintiff would have accorded plaintiff complete relief. (Id. at 645).

All these principles suggest that the remedy should have been limited, at most, to the specific FOIA requests in this case. Hajro obtained complete FOIA relief with the production of the documents he requested. He has made no showing that he will again be faced with any harm from USCIS's FOIA practices. This is

not a class action and the district court has no power to issue relief for future FOIA requestors who are not before the court. Indeed, the nationwide impact of the court's relief would ignore the facts and circumstances that would obtain in individual cases and deprive future courts of an opportunity to examine USCIS's practices in concrete factual situations that pertain to specific FOIA requests. The risk is real that the District Court for the Northern District of California could become a super-FOIA court, to which future registration file requestors would flock seeking contempt citations for any failure to adhere to FOIA time deadlines. That result should not be countenanced.

## V. THE FEE AWARD SHOULD BE VACATED AND REMANDED

As noted, the district court awarded FOIA fees for this entire litigation, including FOIA fees on claims that the court acknowledged were not FOIA claims, such as plaintiffs' equal protection and due process claims as well as the two claims based on the Mayock Agreement. The district court also awarded FOIA fees on claims for which plaintiffs failed to prevail, such as the equal protection claim and the litigation against the defendants, other than USCIS, who were granted summary judgment in this litigation. (RE 35). The district court purported to justify this expansive award merely because plaintiffs generally "achieved their goals." (RE 25).

- 53 -

That award of fees is improper. First, in awarding FOIA fees for non-FOIA claims, the award goes far beyond FOIA, which authorizes an award of reasonable attorneys fees against the United States "in any case *under this section* in which the complainant has substantially prevailed." 5 U.S.C. §552(a)(4)(E) (emphasis added). This provision is a limited waiver of sovereign immunity and thus "must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957). See *Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 617-18 (9th Cir. 2009) (applying sovereign immunity principles to narrowly construe the scope of FOIA fees available under the Open Government Act). The district court recognized these principles in holding that Section 552(a)(4)(4) "does not apply to Claims Seven [due process claim], Eight [the APA notice and comment claim], or Nine [Equal Protection claim]." (RE 10, 13).

The district court nonetheless awarded FOIA fees on all these claims merely because these claims arose from a "common nucleus of operative facts" with the FOIA claims. (RE 25). That was error. As the Supreme Court's decisions in *Kissinger* and *Tax Analysts* make plain and the district court recognized here, contract claims, equal protection, due process and APA procedural claims are simply not "cases under this section" within the meaning of Section 552(a)(4)(4).

- 54 -

Contract claims are the province of the Court of Federal Claims and the Tucker Act and only that court may consider fee petitions on such claims.

More fundamentally, the only fee shifting statute and waiver of sovereign immunity applicable to these constitutional and APA procedural claims is the Equal Access to Justice Act, 28 U.S.C. 2412(d)(1)(A) ("EAJA") (allowing fees for "proceedings for judicial review of agency action").[12/] Here, the district court failed to realize that fees under *FOIA* may not be awarded on such claims, regardless of whether plaintiffs have prevailed on these claims and regardless of whether these claims share a "common nucleus" of fact with FOIA claims. Any other result would effectively negate EAJA coverage for such claims, and thus allow plaintiffs impermissibly to evade the specific requirements and limits applicable to fee awards under EAJA. See, e.g., *Burka v. HHS*, 142 F.3d 1286, 1292 & n.1 (D.C. Cir. 1998) (Wald J., concurring) ("the purposes of the fee-shifting provisions of

---

[12/] We acknowledge that *Oregon Natural Desert* held that FOIA fees may be awarded on a successful challenge to the "validity of a regulation governing the processing of FOIA requests," where the FOIA regulation was challenged under the APA as being violative of FOIA requirements. (572 F.2d at 618). Here, the district court here awarded FOIA fees on plaintiffs' *notice and comment* APA claim and on their constitutional and contract claims even though the court expressly recognized that the FOIA fee provision did not apply to these claims. (RE 8-9, 13, 25). Nothing in *Oregon Natural Desert* would permit such an award. However, as noted in the text, *infra*, this Court need not now reach these issues if the fee award is vacated and the case remanded for a recalculation of the fee award in light of this Court's decision on the merits.

EAJA and of FOIA are different."); *Nichols v. Pierce*, 740 F.2d 1249, 1253-1255 (D.C. Cir. 1984) (distinguishing FOIA and EAJA fees and noting that "[g]reat care must be taken to ensure that consent to suit is not extended beyond the literal terms of the statute").

Second, awarding fees on claims and arguments on which plaintiffs have not prevailed violates the central principle that fees must be "reasonable" and may be awarded only to a prevailing party. While a plaintiff need not recover on all his claims, *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983), to obtain a full fee recovery, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), quoting *Hensley*, 473 U.S. at 436. Thus, "where the plaintiff achieved only limited success, the district court should award only that amount that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. See also *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005).

Here, at least parts of the district court's orders on the merits must be reversed. That result will alter the degree of success that plaintiffs ultimately achieved in this case and that outcome will necessarily bear on the fee award. *Hensley*, 461 U.S. at 439-40 ("A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."). For example, there is simply no viable argument supporting the district

court's jurisdiction to enforce the Mayock Agreement. That ruling was central to the court's award of fees (RE 26) and reversal would mean that neither Hajro nor Mayock should receive fees on their two claims based on that Agreement.

Similarly, if Mayock, as a non-requestor, lacks standing to bring suit under FOIA, that result would preclude the award of *any* FOIA fees to Mayock. Likewise, if Hajro lacks standing to obtain prospective injunctive relief on the pattern and practice claims, then Hajro should not receive fees on those claims. Indeed, in the absence of the pattern and practice claim, most of Hajro's FOIA claims became moot with the belated production of the requested documents. That result could limit recovery and preclude a fee award to Hajro on those mooted claims as well. See *Oregon Natural Desert*, 572 F.3d at 616.[13] A ruling reversing or modifying the equitable relief accorded here as overbroad would also affect the results on which the district court relied in awarding fees. (RE 26).

---

[13] Fees to Hajro would not be payable under the "catalyst theory" made available by the Open Government Act. The Act's amendments to FOIA "were signed into law on December 31, 2007." *Oregon Natural Desert*, 572 F.3d at 616. Hajro's FOIA request was made "on or about November 9, 2007." (RE 35). Application of the Act to such requests would impose retroactive consequences on agency proceedings predating the effective date of the Act. That result was rejected in *Oregon Natural Desert* in holding that the Act could not be given such retroactive effect. (572 F.3d at 617). However, as explained in the text, *infra*, this issue should be explored, if pressed by Hajro, in the district court initially, after a remand of the fee decision.

In light of such considerations, the proper course is to vacate the entire fee award and remand for a recalculation of fees in light of this Court's opinion on the merits in this case. See *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 742 F.3d 377, 396-97 (9th Cir. 2014) ("our decision here has changed several of the factors on which the district court relied to reduce the fee request. We, therefore, vacate the fee award in its entirety and remand to permit the district court to reconsider Experience Hendrix's fee request in full."). See also *Oregon Natural Desert,* 572 F.3d at 618 (remanding for a recalculation of FOIA fees). Vacating and remanding here would allow the district court to reconsider the fee award in light of this Court's rulings and permit this Court to review, if necessary, any subsequent award of fees in light of a concrete situation, as informed by the district court's application of that decision.

## CONCLUSION

For all the foregoing reasons, the judgment on the merits should be reversed and the judgment on fees vacated and remanded for reconsideration in light of the merits ruling of this Court.

Respectfully submitted:

STUART F. DELERY
 *Assistant Attorney General*

MELINDA HAAG
 *United States Attorney*

LEONARD SCHAITMAN
 (202) 514-3441

*/s/ Mark W. Pennak*

MARK W. PENNAK
 (202) 514-1673
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7212*
 *950 Pennsylvania Avenue, NW*
 *Department of Justice*
 *Washington, D.C. 20530-0001*

- 59 -

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIRSAD HAJRO, et al., | ) |
| *Plaintiffs-Appellees*, | ) |
| | ) |
| v. | ) Nos. 11-17948, 12-17765 |
| | ) |
| UNITED STATES CITIZENSHIP AND | ) |
| IMMIGRATION SERVICES, et al., | ) |
| *Defendants-Appellants*. | ) |
| | ) |
| _____ | ) |

**STATEMENT OF RELATED CASES**

Counsel is not aware of any related cases to this case within the meaning of

Ninth Circuit Rule 28-2.6.

_/s/ Mark W. Pennak_____
Mark W. Pennak, Counsel for Appellants

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIRSAD HAJRO, et al. , | ) |
| *Plaintiffs-Appellees* | ) |
| | ) |
| v. | ) Nos. 11-17948, 12-17765 |
| | ) |
| UNITED STATES CITIZENSHIP AND | ) |
| IMMIGRATION SERVICES, et al., | ) |
| *Defendants-Appellants.* | ) |
| | ) |
| _____ | ) |

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, the undersigned hereby certifies that the foregoing Brief for the United States is in a proportional font with serifs, i.e., Times New Roman, utilizes 14-point type size in both text and footnotes, is double-spaced, except in headings and footnotes, and is 13,943 words long, excluding from that total the table of contents, the table of authorities, and certificates, as determined by the word-count function of version 15 of WordPerfect word processing software.

_/s/ Mark W. Pennak_____
Mark W. Pennak, Counsel for Appellants

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIRSAD HAJRO, et al., | ) |
| *Plaintiffs-Appellees*, | ) |
| | ) |
| v. | ) Nos. 11-17948, 12-17765 |
| | ) |
| UNITED STATES CITIZENSHIP AND | ) |
| IMMIGRATION SERVICES, et al., | ) |
| *Defendants-Appellants*. | ) |
| | ) |
| _____ | ) |

## CERTIFICATE OF SERVICE

The undersigned counsel for United States hereby certifies that, on May 28,

2014, the foregoing Brief of Appellant, was electronically served on counsel

identified below via transmission of Notices of Electronic Filing generated by

CM/ECF and by email:

Kip Evan Steinberg
Law Offices of Kip Evan Steinberg
1000 Fourth Street
Suite 600
San Rafael, CA 94901

 /s/ Mark W. Pennak
Mark W. Pennak, Counsel for
Appellants

**STATUTORY ADDENDUM**



**Effective: October 28, 2009**

United States Code Annotated Currentness
    Title 5. Government Organization and Employees (Refs & Annos)
        Part I. The Agencies Generally
            Chapter 5. Administrative Procedure (Refs & Annos)
                Subchapter II. Administrative Procedure (Refs & Annos)
                    ➡➡ **§ 552. Public information; agency rules, opinions, orders, records, and proceedings**

&lt;Notes of Decisions for 5 USCA § 552 are displayed in two separate documents. Notes of Decisions for subdivisions I to VII are contained in this document. For Notes of Decisions for subdivisions VIII to end, see second document for 5 USCA § 552.&gt;

**(a)** Each agency shall make available to the public information as follows:

**(1)** Each agency shall separately state and currently publish in the Federal Register for the guidance of the public--

    **(A)** descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

    **(B)** statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

    **(C)** rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

    **(D)** substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

    **(E)** each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

**(2)** Each agency, in accordance with published rules, shall make available for public inspection and copying--

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(A)** final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

**(B)** those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

**(C)** administrative staff manuals and instructions to staff that affect a member of the public;

**(D)** copies of all records, regardless of form or format, which have been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; and

**(E)** a general index of the records referred to under subparagraph (D);

unless the materials are promptly published and copies offered for sale. For records created on or after November 1, 1996, within one year after such date, each agency shall make such records available, including by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means. To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in subparagraph (D). However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made. If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made. Each agency shall also maintain and make available for public inspection and copying current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published. Each agency shall promptly publish, quarterly or more frequently, and distribute (by sale or otherwise) copies of each index or supplements thereto unless it determines by order published in the Federal Register that the publication would be unnecessary and impracticable, in which case the agency shall nonetheless provide copies of such index on request at a cost not to exceed the direct cost of duplication. Each agency shall make the index referred to in subparagraph (E) available by computer telecommunications by December 31, 1999. A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if--

**(i)** it has been indexed and either made available or published as provided by this paragraph; or

**(ii)** the party has actual and timely notice of the terms thereof.

**(3)(A)** Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

**(B)** In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

**(C)** In responding under this paragraph to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system.

**(D)** For purposes of this paragraph, the term "search" means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request.

**(E)** An agency, or part of an agency, that is an element of the intelligence community (as that term is defined in section 3(4) of the National Security Act of 1947 (50 U.S.C. 401a(4))) shall not make any record available under this paragraph to--

    **(i)** any government entity, other than a State, territory, commonwealth, or district of the United States, or any subdivision thereof; or

    **(ii)** a representative of a government entity described in clause (i).

**(4)(A)(i)** In order to carry out the provisions of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced. Such schedule shall conform to the guidelines which shall be promulgated, pursuant to notice and receipt of public comment, by the Director of the Office of Management and Budget and which shall provide for a uniform schedule of fees for all agencies.

**(ii)** Such agency regulations shall provide that--

    **(I)** fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;

    **(II)** fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media; and

    **(III)** for any request not described in (I) or (II), fees shall be limited to reasonable standard charges for document search and duplication.

In this clause, the term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. In this clause, the term "news" means information that is about current events or that would be of current interest to the public. Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

as disseminators of "news") who make their products available for purchase by or subscription by or free distribution to the general public. These examples are not all-inclusive. Moreover, as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities. A freelance journalist shall be regarded as working for a news-media entity if the journalist can demonstrate a solid basis for expecting publication through that entity, whether or not the journalist is actually employed by the entity. A publication contract would present a solid basis for such an expectation; the Government may also consider the past publication record of the requester in making such a determination.

**(iii)** Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

**(iv)** Fee schedules shall provide for the recovery of only the direct costs of search, duplication, or review. Review costs shall include only the direct costs incurred during the initial examination of a document for the purposes of determining whether the documents must be disclosed under this section and for the purposes of withholding any portions exempt from disclosure under this section. Review costs may not include any costs incurred in resolving issues of law or policy that may be raised in the course of processing a request under this section. No fee may be charged by any agency under this section--

**(I)** if the costs of routine collection and processing of the fee are likely to equal or exceed the amount of the fee; or

**(II)** for any request described in clause (ii)(II) or (III) of this subparagraph for the first two hours of search time or for the first one hundred pages of duplication.

**(v)** No agency may require advance payment of any fee unless the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250.

**(vi)** Nothing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records.

**(vii)** In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: *Provided*, That the court's review of the matter shall be limited to the record before the agency.

**(viii)** An agency shall not assess search fees (or in the case of a requester described under clause (ii)(II), duplication fees) under this subparagraph if the agency fails to comply with any time limit under paragraph (6), if no unusual or exceptional circumstances (as those terms are defined for purposes of paragraphs (6)(B) and (C), respectively) apply to the processing of the request.

**(B)** On complaint, the district court of the United States in the district in which the complainant resides, or has

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

**(C)** Notwithstanding any other provision of law, the defendant shall serve an answer or otherwise plead to any complaint made under this subsection within thirty days after service upon the defendant of the pleading in which such complaint is made, unless the court otherwise directs for good cause shown.

[**(D)** Repealed. Pub.L. 98-620, Title IV, § 402(2), Nov. 8, 1984, 98 Stat. 3357]

**(E)(i)** The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

**(ii)** For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--

   **(I)** a judicial order, or an enforceable written agreement or consent decree; or

   **(II)** a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

**(F)(i)** Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding. The Special Counsel, after investigation and consideration of the evidence submitted, shall submit his findings and recommendations to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative. The administrative authority shall take the corrective action that the Special Counsel recommends.

**(ii)** The Attorney General shall--

   **(I)** notify the Special Counsel of each civil action described under the first sentence of clause (i); and

   **(II)** annually submit a report to Congress on the number of such civil actions in the preceding year.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(iii)** The Special Counsel shall annually submit a report to Congress on the actions taken by the Special Counsel under clause (i).

**(G)** In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee, and in the case of a uniformed service, the responsible member.

**(5)** Each agency having more than one member shall maintain and make available for public inspection a record of the final votes of each member in every agency proceeding.

**(6)(A)** Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall--

**(i)** determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and

**(ii)** make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

The 20-day period under clause (i) shall commence on the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this section to receive requests under this section. The 20-day period shall not be tolled by the agency except--

**(I)** that the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section; or

**(II)** if necessary to clarify with the requester issues regarding fee assessment. In either case, the agency's receipt of the requester's response to the agency's request for information or clarification ends the tolling period.

**(B)(i)** In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days, except as provided in clause (ii) of this subparagraph.

**(ii)** With respect to a request for which a written notice under clause (i) extends the time limits prescribed under clause (i) of subparagraph (A), the agency shall notify the person making the request if the request cannot be processed within the time limit specified in that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request. To aid the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

requester, each agency shall make available its FOIA Public Liaison, who shall assist in the resolution of any disputes between the requester and the agency. Refusal by the person to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist for purposes of subparagraph (C).

**(iii)** As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests--

    **(I)** the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

    **(II)** the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

    **(III)** the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

**(iv)** Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for the aggregation of certain requests by the same requestor, or by a group of requestors acting in concert, if the agency reasonably believes that such requests actually constitute a single request, which would otherwise satisfy the unusual circumstances specified in this subparagraph, and the requests involve clearly related matters. Multiple requests involving unrelated matters shall not be aggregated.

**(C)(i)** Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request. Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request.

**(ii)** For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

**(iii)** Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

**(D)(i)** Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for multitrack processing of requests for records based on the amount of work or time (or both) involved in processing requests.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(ii)** Regulations under this subparagraph may provide a person making a request that does not qualify for the fastest multitrack processing an opportunity to limit the scope of the request in order to qualify for faster processing.

**(iii)** This subparagraph shall not be considered to affect the requirement under subparagraph (C) to exercise due diligence.

**(E)(i)** Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records--

**(I)** in cases in which the person requesting the records demonstrates a compelling need; and

**(II)** in other cases determined by the agency.

**(ii)** Notwithstanding clause (i), regulations under this subparagraph must ensure--

**(I)** that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request; and

**(II)** expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing.

**(iii)** An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing under this subparagraph. Agency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

**(iv)** A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request.

**(v)** For purposes of this subparagraph, the term "compelling need" means--

**(I)** that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

**(II)** with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

**(vi)** A demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief.

**(F)** In denying a request for records, in whole or in part, an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request, unless providing such estimate would harm an interest protected by the exemption in subsection (b) pursuant to which the denial is made.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(7)** Each agency shall--

**(A)** establish a system to assign an individualized tracking number for each request received that will take longer than ten days to process and provide to each person making a request the tracking number assigned to the request; and

**(B)** establish a telephone line or Internet service that provides information about the status of a request to the person making the request using the assigned tracking number, including--

**(i)** the date on which the agency originally received the request; and

**(ii)** an estimated date on which the agency will complete action on the request.

**(b)** This section does not apply to matters that are--

**(1)** (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

**(2)** related solely to the internal personnel rules and practices of an agency;

**(3)** specifically exempted from disclosure by statute (other than section 552b of this title), if that statute--

**(A)(i)** requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

**(ii)** establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

**(B)** if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

**(4)** trade secrets and commercial or financial information obtained from a person and privileged or confidential;

**(5)** inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

**(6)** personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

**(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

**(8)** contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

**(9)** geological and geophysical information and data, including maps, concerning wells.

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

**(c)(1)** Whenever a request is made which involves access to records described in subsection (b)(7)(A) and--

**(A)** the investigation or proceeding involves a possible violation of criminal law; and

**(B)** there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings,

the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.

**(2)** Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.

**(3)** Whenever a request is made which involves access to records maintained by the Federal Bureau of Investigation pertaining to foreign intelligence or counterintelligence, or international terrorism, and the existence of the records is classified information as provided in subsection (b)(1), the Bureau may, as long as the existence of the records remains classified information, treat the records as not subject to the requirements of this section.

**(d)** This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. This section is not authority to withhold information from Congress.

**(e)(1)** On or before February 1 of each year, each agency shall submit to the Attorney General of the United

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

States a report which shall cover the preceding fiscal year and which shall include--

**(A)** the number of determinations made by the agency not to comply with requests for records made to such agency under subsection (a) and the reasons for each such determination;

**(B)(i)** the number of appeals made by persons under subsection (a)(6), the result of such appeals, and the reason for the action upon each appeal that results in a denial of information; and

**(ii)** a complete list of all statutes that the agency relies upon to authorize the agency to withhold information under subsection (b)(3), the number of occasions on which each statute was relied upon, a description of whether a court has upheld the decision of the agency to withhold information under each such statute, and a concise description of the scope of any information withheld;

**(C)** the number of requests for records pending before the agency as of September 30 of the preceding year, and the median and average number of days that such requests had been pending before the agency as of that date;

**(D)** the number of requests for records received by the agency and the number of requests which the agency processed;

**(E)** the median number of days taken by the agency to process different types of requests, based on the date on which the requests were received by the agency;

**(F)** the average number of days for the agency to respond to a request beginning on the date on which the request was received by the agency, the median number of days for the agency to respond to such requests, and the range in number of days for the agency to respond to such requests;

**(G)** based on the number of business days that have elapsed since each request was originally received by the agency--

**(i)** the number of requests for records to which the agency has responded with a determination within a period up to and including 20 days, and in 20-day increments up to and including 200 days;

**(ii)** the number of requests for records to which the agency has responded with a determination within a period greater than 200 days and less than 301 days;

**(iii)** the number of requests for records to which the agency has responded with a determination within a period greater than 300 days and less than 401 days; and

**(iv)** the number of requests for records to which the agency has responded with a determination within a period greater than 400 days;

**(H)** the average number of days for the agency to provide the granted information beginning on the date on which the request was originally filed, the median number of days for the agency to provide the granted information, and the range in number of days for the agency to provide the granted information;

**(I)** the median and average number of days for the agency to respond to administrative appeals based on the date on which the appeals originally were received by the agency, the highest number of business days taken

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

by the agency to respond to an administrative appeal, and the lowest number of business days taken by the agency to respond to an administrative appeal;

**(J)** data on the 10 active requests with the earliest filing dates pending at each agency, including the amount of time that has elapsed since each request was originally received by the agency;

**(K)** data on the 10 active administrative appeals with the earliest filing dates pending before the agency as of September 30 of the preceding year, including the number of business days that have elapsed since the requests were originally received by the agency;

**(L)** the number of expedited review requests that are granted and denied, the average and median number of days for adjudicating expedited review requests, and the number adjudicated within the required 10 days;

**(M)** the number of fee waiver requests that are granted and denied, and the average and median number of days for adjudicating fee waiver determinations;

**(N)** the total amount of fees collected by the agency for processing requests; and

**(O)** the number of full-time staff of the agency devoted to processing requests for records under this section, and the total amount expended by the agency for processing such requests.

**(2)** Information in each report submitted under paragraph (1) shall be expressed in terms of each principal component of the agency and for the agency overall.

**(3)** Each agency shall make each such report available to the public including by computer telecommunications, or if computer telecommunications means have not been established by the agency, by other electronic means. In addition, each agency shall make the raw statistical data used in its reports available electronically to the public upon request.

**(4)** The Attorney General of the United States shall make each report which has been made available by electronic means available at a single electronic access point. The Attorney General of the United States shall notify the Chairman and ranking minority member of the Committee on Government Reform and Oversight of the House of Representatives and the Chairman and ranking minority member of the Committees on Governmental Affairs and the Judiciary of the Senate, no later than April 1 of the year in which each such report is issued, that such reports are available by electronic means.

**(5)** The Attorney General of the United States, in consultation with the Director of the Office of Management and Budget, shall develop reporting and performance guidelines in connection with reports required by this subsection by October 1, 1997, and may establish additional requirements for such reports as the Attorney General determines may be useful.

**(6)** The Attorney General of the United States shall submit an annual report on or before April 1 of each calendar year which shall include for the prior calendar year a listing of the number of cases arising under this section, the exemption involved in each case, the disposition of such case, and the cost, fees, and penalties assessed under subparagraphs (E), (F), and (G) of subsection (a)(4). Such report shall also include a description

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

of the efforts undertaken by the Department of Justice to encourage agency compliance with this section.

**(f)** For purposes of this section, the term--

  **(1)** "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency; and

  **(2)** "record" and any other term used in this section in reference to information includes--

    **(A)** any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and

    **(B)** any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management.

**(g)** The head of each agency shall prepare and make publicly available upon request, reference material or a guide for requesting records or information from the agency, subject to the exemptions in subsection (b), including--

  **(1)** an index of all major information systems of the agency;

  **(2)** a description of major information and record locator systems maintained by the agency; and

  **(3)** a handbook for obtaining various types and categories of public information from the agency pursuant to chapter 35 of title 44, and under this section.

**(h)(1)** There is established the Office of Government Information Services within the National Archives and Records Administration.

  **(2)** The Office of Government Information Services shall--

    **(A)** review policies and procedures of administrative agencies under this section;

    **(B)** review compliance with this section by administrative agencies; and

    **(C)** recommend policy changes to Congress and the President to improve the administration of this section.

  **(3)** The Office of Government Information Services shall offer mediation services to resolve disputes between persons making requests under this section and administrative agencies as a non-exclusive alternative to litigation and, at the discretion of the Office, may issue advisory opinions if mediation has not resolved the dispute.

**(i)** The Government Accountability Office shall conduct audits of administrative agencies on the implementation of this section and issue reports detailing the results of such audits.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case: 11-17948, 05/28/2014, ID: 9111230, DktEntry: 44-1, Page 90 of 127

**(j)** Each agency shall designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level).

**(k)** The Chief FOIA Officer of each agency shall, subject to the authority of the head of the agency--

**(1)** have agency-wide responsibility for efficient and appropriate compliance with this section;

**(2)** monitor implementation of this section throughout the agency and keep the head of the agency, the chief legal officer of the agency, and the Attorney General appropriately informed of the agency's performance in implementing this section;

**(3)** recommend to the head of the agency such adjustments to agency practices, policies, personnel, and funding as may be necessary to improve its implementation of this section;

**(4)** review and report to the Attorney General, through the head of the agency, at such times and in such formats as the Attorney General may direct, on the agency's performance in implementing this section;

**(5)** facilitate public understanding of the purposes of the statutory exemptions of this section by including concise descriptions of the exemptions in both the agency's handbook issued under subsection (g), and the agency's annual report on this section, and by providing an overview, where appropriate, of certain general categories of agency records to which those exemptions apply; and

**(6)** designate one or more FOIA Public Liaisons.

**(l)** FOIA Public Liaisons shall report to the agency Chief FOIA Officer and shall serve as supervisory officials to whom a requester under this section can raise concerns about the service the requester has received from the FOIA Requester Center, following an initial response from the FOIA Requester Center Staff. FOIA Public Liaisons shall be responsible for assisting in reducing delays, increasing transparency and understanding of the status of requests, and assisting in the resolution of disputes.

CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 383; Pub.L. 90-23, § 1, June 5, 1967, 81 Stat. 54; Pub.L. 93-502, §§ 1 to 3, Nov. 21, 1974, 88 Stat. 1561 to 1564; Pub.L. 94-409, § 5(b), Sept. 13, 1976, 90 Stat. 1247; Pub.L. 95-454, Title IX, § 906(a)(10), Oct. 13, 1978, 92 Stat. 1225; Pub.L. 98-620, Title IV, § 402(2), Nov. 8, 1984, 98 Stat. 3357; Pub.L. 99-570, Title I, §§ 1802, 1803, Oct. 27, 1986, 100 Stat. 3207-48, 3207-49; Pub.L. 104-231, §§ 3 to 11, Oct. 2, 1996, 110 Stat. 3049 to 3054; Pub.L. 107-306, Title III, § 312, Nov. 27, 2002, 116 Stat. 2390; Pub.L. 110-175, §§ 3, 4(a), 5, 6(a)(1), (b)(1), 7(a), 8 to 10(a), 12, Dec. 31, 2007, 121 Stat. 2525 to 2530; Pub.L. 111-83, Title V, § 564(b), Oct. 28, 2009, 123 Stat. 2184.)

Current through P.L. 113-74 approved 1-16-14

Westlaw. (C) 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**MAYOCK V. INS, NO. C-85-5169-CAL (N.D. Cal.).**

| DIST. | OFF. | DOCKET YR. | NUMBER | YR. | N/S | O. | D. | R. | $ DEMAND | JUDGE/ MAG. | COUNTY | JURY DEM. | DOCKET YR. NUMBER |
|-------|------|------------|--------|-----|-----|----|----|----|----------|------------|--------|-----------|-------------------|
| 971 | 3 | 85 | 5169 | 07 | 31 | 85 | 2 | 895 | 1 | | Nearest $1,000 Injunctive Relief | J 7123 M | 06001 | | 85 5169 CAL |

| PLAINTIFFS | DEFENDANTS |
|-----------|------------|
| CLOSING CARD PREPARED<br>14 ALVARADO-MORALES, JUAN MANUEL; PEREZ-SOLIS, NORMA; MELARA, ALBA; TEHRANIJAM, HASSAN; MORALES, MILAGRO | NELSON, ALAN; IMMIGARTION AND NATURALIZATION SERVICE; ILCHERT, DAVID, DISTRICT DIRECTOR |

**CAUSE**

(CITE THE U.S. CIVIL STATUTE UNDER WHICH THE CASE
IS FILED AND WRITE A BRIEF STATEMENT OF CAUSE)
5:552 Freedom of Information Act

**ATTORNEYS**

*James R. Mayock
~~167 Fell Street~~
~~San Francisco, CA 94102~~
~~(415) 864-6750~~

Peter Koenig
HANCOCK, ROTHERT & BUNSHOFT
Four Embarcadero Center, Tenth Flr.
San Francisco, CA 94111-4168

JAMES MAYOCK
*550 Montgomery St., #700
San Francisco, CA 94111
(415) 781-3400

RICHARD PEARL
685 Market Street, Suite 690
San Francisco, CA 94105
(415) 243-9912

~~Andrew M. Wolfe~~ Stuart E. Schiffer
~~Larry J. Gallagher~~
AUSA
(415) 556-2784
Mark W. Batten
Elizabeth A. Pugh
Neal Dittersdorf
Dept. of Justice
10th & Pennsylvania Ave., Rm. 3720
Washington, D.C. 20530
(202) 633-4470

| CHECK HERE IF CASE WAS FILED IN FORMA PAUPERIS | FILING FEES PAID | | | STATISTICAL CARDS | |
|---|---|---|---|---|---|
| | DATE | RECEIPT NUMBER | C.D. NUMBER | CARD | DATE MAILED |
| | | | | JS-5 | |
| | | | | JS-6 | 7/13/89 |

| DATE | NR. | PROCEEDINGS |
|------|-----|-------------|
| | | Alvarado -v- Nelson     C-85-5169 CAL |
| **1985** | | |
| Jul 31 | 1 | COMPLAINT: issued process |
| | 2 | ORDER: that a status conference is set 11/1/85, 11:00 a.m.     CAL |
| Nov 22 | 3 | MINUTES: (c/r C. Pline) 11/1/85 - status conference not held; case continued to 12/20/85, 11:00 a.m. for further status conference. CAL |
| | 4 | Clerk's Notice - that a status conference is set 12/20/85, 11:00 a.m. |
| 26 | 5 | Letter from J. Mayock, 11/22/85, to Clerk re rescheduling of the status conference |
| Dec 11 | 6 | Joint Status Conference Statement |
| 19 | 7 | Plaintiff's FIRST AMENDED COMPLAINT |
| **1986** | | |
| Feb 20 | 8 | Joint Status Conference Statement; 2/28/86, 11:00 a.m. |
| | 9 | Defendant's certificate of service of #8 to plaintiff on 2/20/86 |
| Mar 3 | 10 | MINUTES: 2/28/86 (c/r S. Larkin) statua conference held; caes continued to 4/18/86, 11:00 a.m.     CAL |
| 6 | 11 | Defendant's ANSWER TO FIRST AMENDED COMPLAINT |
| Apr 28 | | RECEIVED: Stipulation to continue status conference |
| | 12 | MINUTES: 4/18/86 (c/r M. Ashwell) status conference not held; case continued to 5/2/86, 11:00 a.m. for further status conference.     CAL |
| 30 | 13 | Joint Status Conference Statement |
| | 14 | Plaintiffs' motion to compel preparation of a Vaughn Index; memo of points & authorities |
| | | - RECEIVED: Order granting Vaugh Index |
| May 1 | 15 | Joint Status Conference Statement |
| 2 | 16 | MINUTES: (c/r R. Jorstad) status conference held; plaintiff's motion to compel preparation of Vaughn Index off calendar; case continued to 5/9/86, 9:00 a.m. by telephone for further status conference.     CAL |
| 14 | 17 | Clerk's Notice of that a status conference is set 6/6/86, 11:00 a.m. |
| Jun 4 | 18 | Plaintiff's status conference statement |
| 6 | 19 | MINUTES: Status conference held. Government to file motion by 7-7-86, Plaintiff to file motion by 8-8-86.     CAL |

SEE SHEET "B"

CLOSING CARD PREPARED

SHEET "B"    C-85-5169 CAL

IC 111A
Rev. 1/75)

### CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| ALVARADO | NELSON | DOCKET NO. _____<br>PAGE ____ OF _____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| **1986** | | |
| Jul 1 | 20 | Defendants' answers to plaintiff's 1st set of interrogatories |
| 7 | 21 | Defendant's declaration of David N. Ilchert |
| Aug 8 | | RECEIVED: Stipulation for extention of date for filing motion |
| 11 | 22 | STIPULATION & ORDER: that plaintiff's motion for partial summary judgment is extended to 8/15/86.                    CAL |
| 15 | 23 | Plaintiff's notice of motion for partial summary judgment; 9/19/86, 9:30 a.m. |
| | 24 | – memo of points & autnorities in support of #23 |
| 27 | 25 | Plaintiff's memo of points & authorities in support of motion for partial summary judgment; 9/19/86, 9:30 a.m. |
| 28 | 26 | STIPULATION & ORDER: that the motion for summary judgment is continued to 10/17/86.                    CAL |
| Oct 6 | 27 | Defendant's opposition to motion for summary judgment |
| 17 | 28 | MINUTES: (c/r R. Linkerman) plaintiffs motion for summary judgment submitted; further documents from parties due by 11/07/86.    CAL |
| Nov 10 | 29 | ORDER: that 22 documents as part of the certificate of counsel of defendant be filed under seal.                    CAL |
| | | Entered: 11/12/86    Clerk |
| | 30 | Defendant's certificate of counsel re Vaughn Index |
| | 31 | – certificate of counsel – 22 documents filed Under Seal, located on Shelf _____ |
| | 32 | Plaintiff's status conference statement |
| Dec 24 | 33 | ORDER: that partial summary judgment is entered in favor of plaintiffs as to documents 1, G-5m G-1, H-2 and H-3; plaintiffs' motions for summary judgment to compel disclosure of other documents stated above are DENIED; a status conference is set 1/16/87, 11:00 a.m.                    CAL |
| | | Entered: 12/29/86    Clerk |

OVER

DC 111A
(Rev. 1/75)

SHEET "B"

C-85-5169 CAL

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| ALVARDO-MORALES | I.N.S. | DOCKET NO. _____<br>PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| **1987** | | |
| Jan 16 | 34 | MINUTES: (c/r R. Jorstad) status conference held; defendant's motion for summary judgment filed by 4/17/87; plaintiff to file after that.                                                    CAL |
| Apr 17 | 35 | Defendants' notice and motion to dismiss, hearing: 5-15-87,9:30AM. |
| | 36 | —memo in support of #35 |
| | | RECEIVED:  order |
| 21 | 37 | Defendants' amended certificate of service. |
| 28 | | RECEIVED:  proposed stipulation and order continuing motion-dismiss |
| 29 | 38 | STIPULATION & ORDER:  Defendant's motion to dismiss continued to 6/26/87 at 9:30am.                                                    CAL |
| May 15 | 39 | MINUTES:  (c/r Willilam Johnston) defendant's motion to dismiss continued; case continued to 6/26/87 9:30am for defendant's motion to dismiss           CAL |
| Jun 12 | 40 | Plaintiffs' opposition to defendants' motion to dismiss |
| 19 | 41 | Defendant's reply memorandum re: motion to dismiss, 6/26/87 9:30am |
| 26 | 42 | MINUTES:  (c/r: Jim Yeoman) defendant's motion to dismiss granted; plaintiff granted leave to amend by 8/31/87                                         CAL |
| 26 | | RECEIVED: Stipulation & order extending date for filing of amended complaint |
| 27 | 43 | STIPULATION & ORDER: that the last day for filling of plaintiffs' amended complaint now set for 8/31/87, may be extended to 9/30/87            CAL |
| Sep 30 | 44 | Plaintiffs' SECOND AMENDED COMPLAINT |
| Oct 5 | 45 | Clerk's notice: status conference will be held 11/20/87 at 11:00am; status conference statements are due 7 days before the hearing date |
| Nov 13 | | RECEIVED: stipulation & order continuing status conference |
| 17 | 46 | STIPULATION & ORDER: status conference currently set for 11/20/87 shall be continued to 1/8/88 at 11:00am                                         CAL |
| Dec 11 | 47 | Defendants' ANSWER TO   SECOND AMENDED COMPLAINT |
| 31 | 48 | Defendant's status conference statement |

SEE SHEET "C"

CLOSING CARD PREPARED

DC 111A
Rev. 1/75)

SHEET "C"          C-85-5169 CAL

### CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MAYOCK | NELSON | DOCKET NO. _____ |
| | | PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| **1988**<br>Jan 7 | 49 | Plaintiffs' Status Statement, 1/8/88 at 11:00am |
| 8 | 50 | MINUTES: (c/r: none) status conference held; case continued to 2/12/88 at 11:00am for further status conference                                                    CAL |
| Feb 5 | 51 | Joint Status Conference Statement, 2/12/88 at 11:00am |
| | 52 | Plaintiffs' Status Conference Statement, 2/12/88 at 11:00am |
| 12 | 53 | MINUTES: (c/r: none) status conference held; case continued to 2/19/88 at 11:00 for further status conference                                                    CAL |
| 19 | 54 | MINUTES: (c/r: none) status conference held; dicovery 5/31/88; case continued to 6/10/88 at 11:00am for further status conference                                                    CAL |
| 25 | 55 | Defendants' notice of deposition of plaintiffs, 3/25/88 10:00 - 3:30, see document for specific |
| | 56 | - notice of deposition of James R. Mayock, 3/24/88 at 9:30am |
| 26 | 57 | Plaintiffs' notice of association of counsel |
| Apr 25 | 58 | Clerk's notice: defendant's motion to dismiss, set for 5/20/88 is vacated & reset to 5/27/88 at 9:30am; briefing schedule should conform to new date |
| | 59 | Defendant's notice & motions to dismiss, for summary judgment, to disqualify counsel & for sanctions, 5/20/88 at 9:30am |
| | 60 | - memorandum in support of #59 |
| | 61 | - declaration of Andrew M. Wolfe |
| | | - RECEIVED: proposed order |
| 29 | 62 | MINUTES: (c/r: none) status conference held; plaintiff's motion to continue defendant's motion date denied; discovery extended to 7/31/88                                                    CAL |
| May 13 | 63 | Plaintiffs' motion for partial summary judgment, declaration & memorandum of points & authorities & exhibits |
| | 64 | - opposition to motion to dismiss, for summary judgment, to disqualify counsel & for sanctions |
| | 65 | - declaration of Peter J. Koenig in support of #64 |
| 23 | 66 | Defendant's reply memorandum re motion to dismiss for summary judgment to disqualify & for sanctions |

OVER

DC 111A
(Rev. 1/75)

SHEET "C" Continued    C-85-5169 CAL

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MAYOCK | NELSON | DOCKET NO. _____ |
| | | PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| **1988**<br>May 26 | 67 | Plaintiffs' notice of correction of motion for partial summary judgment, 6/10/88 at 9:30am |
| | 68 | Defendants' declaration of Tony Ju |
| | 69 | – declaration of Andrew M. Wolfe |
| | 70 | – opposition to motion for partial summary judgment |
| | 71 | Letter from Andrew M. Wolfe to Judge Legge re opposition to plaintiffs' motion |
| 27 | 72 | MINUTES: (c/r: Sara Larkin) defendant's motion to dismiss granted/denied; defendant's motion to disqualification of Mayock & motion for sanctions denied    CAL |
| Jun 6 | 73 | Plaintiff's reply brief re motion for partial summary judgment |
| 10 | 74 | MINUTES: (c/r: Robert Rogers) plaintiff's motion for partial summary judgment continued; discovery cutoff extended to 8/31/88; case continued to 7/8/88 at 9:30 for plaintiff's motion for production & trial setting    CAL |
| 15 | 75 | Defendant's objections to proposed order |
| 21 | 76 | Plaintiff's response to defendants' objections to proposed order |
| Jul 6 | 77 | ORDER: defendants' motion to dismiss second amended complaint is denied; defendants' motion to dismiss is granted as to named aliens/plaintiffs; defendants' motion for summary judgment is denied; defendants' motion to disqualify James R. Mayock & Associates as counsel is denied, see order for specific    CAL |
| 7 | 78 | Letter from Andrew Wolfe, AUSA, to Judge Legge re 7/8/88 hearing be taken off |
| 11 | 79 | Letter from Peter J. Koenig to Courtroom Deputy re confirm status conference |
| Aug 2 | 80 | Joint Status Conference Statement |
| 26 | 81 | Defendants' joint status conference statement, Sept. 2, 1988 at 11:00 a.m. |
| Sep 2 | 82 | MINUTES: (c/r: none) status conf. held; discovery cutoff 12/31/88; case continue to 3/15/89 at 3:00pm for pretrial conf & 4/3/89 at 9:00am for trial    CAL |
| Oct 26 | 83 | Plaintiff's notice of motion & motion for summary judgment for injunctive relief, 11/23/88 at 3:00pm |
| | 84 | – memorandum of points & authorities in support of #83 |
| | 85 | – statement of undisputed facts in support of #83 |

SEE SHEET "D"

DC 111A
Rev. 1/75)

CLOSING CARD PREPARED

SHEET "D"     C-85-5169 CAL

### CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MAYOCK | NELSON | DOCKET NO. _____ <br> PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| <u>1988</u><br>Oct 26 | 86 | Plaintiffs' declaration of Marc Van Der Hout in support of motion for summary judgment for injunctive relief |
| | 87 | – declaration of David E. Brooks in support of motion for summary judgment |
| | 88 | – declaration of Peter J. Koenig in support of motion for summary judgment |
| | 89 | – declaration of James R. Mayock in support of motion for summary judgment |
| Nov 9 | 90 | Defendants' notice & cross-motion for summary judgment, 11/23/88 at 3:00pm |
| | 91 | – memorandum in opposition to motion for summary judgment & in support of cross-motion for summary judgment |
| | 92 | – notice of filing deposition |
| | 93 | – declaration of Tony Ju |
| | 94 | – declaration of Andrew M. Wolfe |
| 10 | 95 | Defendants' table of contents for memorandum in opposition to motion for summary judgment & cross-motion for summary judgment |
| 16 | 96 | Plaintiff's reply memorandum in support of motion for summary judgment & in opposition to cross-motion for summary judgment |
| 23 | 97 | **MINUTES:** (c/r: Barbara Stockford) Plaintiff's motion for summary judgment **SUBMITTED**; Defendant's motion for summary judgment **SUBMITTED.**     **CAL** |
| | 98 | Defendants' notice of filing of copies of transcripts of deposition of Tony Ju. |
| <u>1989</u><br>Jan 23 | 99 | NOTICE OF INTENDED DECISION & ORDER: parties may file comments on the intended decision & any proposed changes by 2/24/89; hearing will be held on 3/14/89 at 3:30pm     CAL |
| 'eb 22 | 100 | Defendants' ex parte application for enlargement of time |
| | | – proposed order |
| 23 | 101 | ORDER: defendants' ex parte application is granted     CAL |
| 28 | 102 | Plaintiff's certificate of service re #101 |
| ar 08 | 103 | REPORTER'S TRANSCRIPT: 11/23/88 |
| 10 | 104 | Defendants' declaration of David N. Ilchert |

OVER

DC 111A
(Rev. 1/75)

SHEET "D" Continued        C-85-5169 CAL

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MAYOCK | INS | DOCKET NO. _____ |
| | | PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| <u>1989</u><br>Mar 10 | 105 | Plaintiff's comments supporting intended decision granting injunctive relief |
| | 106 | – appendix to plaintiff's comments |
| | 107 | Defendants' comments upon Court's notice of intended decision |
| | 108 | – declaration of Russell Powell |
| 14 | 109 | MINUTES: (c/r: Ray Linkerman) hearing re court's opinion submitted          CAL |
| Apr 18 | 110 | REPORTER'S TRANSCRIPT: 3/14/89 |
| Jun 19 | 111 | OPINION & ORDER: plaintiff's motion for summary judgment is granted in part & defendant's motion for summary judgment is denied, see order for specific          CAL |
| Jul 13 | 112 | Defendants' notice of appearance |
| 14 | 113 | REPORTER'S TRANSCRIPT: 5/27/88 |
| 19 | 114 | JUDGMENT: plaintiff's motion for summary judgment is granted in part & defendant motion for summary judgment is denied; plaintiff is awarded costs of suit, see judgment for specific          CAL<br>Entered in civil docket 7/21/89, copies mailed to parties          clerk |
| 21 | 115 | Plaintiff's proof of service re judgment |
| 25 | 116 | Defendants' motion for stay pending appeal , 8/25/89 at 9:30am |
| | 117 | – memo of law in support of #116 |
| | 118 | – decond declaration of Tony Ju |
| | 119 | – declaration of Philip Waters |
| | 120 | – proof of service re #116-119 |
| | | – RECEIVED: proposed order |
| | 121 | – NOTICE OF APPEAL: Gov't, fee waived, USCA # 89-15977<br>Mailed docket fee payment notification form & case information to USCA |
| 27 | 122 | Plaintiff's Bill of Costs |
| 31 | 123 | Plaintiff's Bill of Costs |
| Aug 09 | 124 | Defendants' amended motion for stay pending appeal, 9/8/89 at 9:30am |
| | 125 | – NOTICE OF APPEAL: Gov't, fee waived, USCA #_____<br>Mailed docket fee payment notification form & case information to USCA |

SEE SHEET E

| DC 111A (Rev. 1/75) | | SHEET E | C-85-5169 CAL |
|---|---|---|---|

CLOSING CARD PREPARED

**CIVIL DOCKET CONTINUATION SHEET**

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MAYOCK | INS | DOCKET NO. _____ <br> PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| **1989** <br> Aug 11 | 126 | Defendants' motion to strike bills of costs. |
| | 127 | —Memo of law in opposition to bills of costs. |
| | | RECEIVED: Order granting defendants' motion. |
| 18 | 128 | Plaintiff's opposition to motion to stay injunction |
| 25 | 129 | Defendants' reply memo of law in support of motion for stay pending appeal |
| | 130 | Plaintiff's second declaration of Philip Waters |
| 28 | 131 | Defendants' supplemental memo of law in support of motion for stay pending appeal |
| Sep 01 | 132 | Defendant's transcript designation & ordering form: 5/27/88, 11/23/88 & 3/14/89 (89-15977) |
| | 133 | Plaintiff's notice of motion & motion for attorney's fees, 9/29/89 at 9:30am |
| | 134 | – memo of points & authorities in supprot of #133 |
| | 135 | – declaration of Mark Joseph Kenney in support of #133 |
| | 136 | – declaration of Susan J. Harriman in support of #133 |
| | 137 | – declaration of Charles C. Marson in support of application for attorneys' fees |
| | 138 | – declaration of Eric J. Sinrod in support of #133 |
| 08 | 139 | MINUTES: (c/r: Jim Yeoman) defendant's motion for stay pending appeal denied <br> CAL |
| 14 | 140 | Plaintiff's ex parte application for an extension of time for filing an applicat-ion for award of attorneys' fees to co-counsel James Mayock & Associates |
| | 141 | – declaration of James Mayock in support of #140 |
| | 142 | – certificate of service re #140-141 |
| | | – RECEIVED: order |
| *11 | 143 | Letter from Thomas M. Bondy to Clerk of USCA re transcript designation: 5/27/88, 11/23/88 & 3/14/89 |
| 15 | | Mailed Certificate of Record (89-15977) |
| | 144 | Plaintiff's memo of points & authorities in opposition to motion to stay proceedings on costs & attorney's fees |
| | | OVER |

SHEET "E" Continued                    C-85-5169 CAL

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MAYOCK | INS | DOCKET NO. _____ |
| | | PAGE ____ OF _____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| **1989**<br>Sep 15 | 145 | Defendants' motion for extension of time to file opposition to motion for attorneys' fees |
| | 146 | – declaration of Neal Dittersdorf in support of #145 |
| | | – RECEIVED: proposed order |
| 18 | 147 | ORDER: attorney for plaintiff shall have an additional 60 days to & including 11/20/89, see order for specific                    CAL |
| 22 | 148 | Plaintiff's reply memo in support of motion for attorny's fees & costs & in opposition to motion for extension of time |
| | 149 | – certificate of service re #147 |
| | 150 | Defendants' reply memo of law in opposition to bill of costs in support of motion to strike bill of costs & to stay any proceeding on costs or attorns'fees |
| 27 | 151 | ORDER: Court will consider both cost bill & attorneys' fees; defendant's motion to stay proceeding on costs & attorneys' fees is denied; defendant's motion for an extension of time to file opposition to motion for costs & attorneys' fees is granted; plaintiff's motion for attorneys' fees will be heard on 11/3/89 at 9:30; opposition due 10/17/89; plaintiff's motion for sanction is denied                    CAL |
| | 152 | Defendants' supplemental declaration of Neal Dittersdorf in support of motion for extension of time to file opposition |
| | 153 | – reply memo in support of motion for extension of time to file opposition |
| Oct 10 | 154 | Receipt of certificate of record |
| | 155 | Defendants' ex parte motion for leave to exceed page limitation on memo |
| | | – RECEIVED: proposed order |
| | 156 | – certificate of service re #155 |
| 12 | 157 | ORDER: defendant's ex parte motion for leave to exceed pages is granted     CAL |
| 23 | 158 | Defendants' memo of law in opposition to motion for attorneys' fees & bill of costs |
| | 159 | – third declaration of Philip waters |
| Nov 15 | 160 | Plaintiff's ex parte application for an extension of time for filing an application for award of attorneys' fees to co-counsel |

SEE SHEET "F"

JC 111A
Rev. 1/75)

CLOSING CARD PREPARED

**CIVIL DOCKET CONTINUATION SHEET**

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MAYOCK | INS | DOCKET NO. _____ |
| | | PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| <u>1989</u><br>Nov 15 | 161 | Plaintiff's declaration of James Mayock in support of application |
| | | – RECEIVED: |
| | 162 | – certificate of service re #160-161 |
| 20 | 163 | ORDER:  attorney shall have an additional 32 days to & including 12/22/89 for filing of any application |
| Dec 07 | 164 | Plaintiff's certificate of service re order |
| 08 | 165 | Plaintiff's third supplemental declaration of Eric J. Sinrod re attorney's fees motion & bill of costs |
| 26 | 166 | Plaintiff's notice of motion and motion for award of attorneys fees to co-counsel set 1-19-90/9:30am. |
| | 167 | – memo of points and authorities. |
| | 168 | – declarations, M. Aaronson, A. Adler, H. Hammitt, B. O. Hing, S. Mayer, R. Pearl, Q. Shea, D. Ungar. |
| | 169 | – – James, R. Mayock in support     – |
| 29 | 170 | Plaintiff's notice of motion and motion for award of attorneys' fees to counsel James Mayock & Assoc. on 1/26/90 at 9:30 a.m.; Memorandum of points and declaration of James R. Mayock in support of motion attached thereto. |
| <u>1990</u><br>Jan 12 | 171 | Defendants' memorandum of law in opposition to motion of plaintiff for pro se attorneys' fees. |
| 19 | 172 | Plaintiff's reply memo of Hancock, Rothert & Bunshoft in support of attorney's fees & costs |
| | 173 | – reply memo of points & authorities in support of plaintiff's application for an award of reasonable attorneys' fees |
| | 174 | – supplemental declaration of James R. Mayock in support of #173 |
| | 175 | – supplemental declaration of Richard M. Pearl in support of #173 |
| 23 | 176 | Plaintiff's assoication of counsel. |
| | 177 | Letter to CAL from Richard Pearl dated 1/23/90 enclosing materials inadvertently omitted from reply memo of points and authorities in support of plaintiff's application for award of reasonable  attorneys' fees filed 1/19/90. |

OVER

SHEET "F" Continued      C-85-5169 CAL

DC 111A
(Rev. 1/75)

### CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MAYOCK | INS | DOCKET NO. _____ |
| | | PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| **1990**<br>Jan 26 | 178 | Defendants' notice to appear in the action |
| | 179 | MINUTES: (c/r: William Johnston) plaintiff's motion for attorneys' fees submitted     CAL |
| May 16 | 180 | **OPINION AND ORDER:** Plaintiff is to be awarded, as the reasonable attorneys' fees of the Hancock firm the sum of $158,372. Plaintiff is also awarded Hancock's reasonable costs in the amount of $9,598.03.     CAL<br>ENTERED: 5-18-90, copies mailed to parties, clerk . |
| 29 | 181 | Plaintiff's notice of motion & motion for reconsideration of order partially denying motion for attorneys' fees, 7-12-90 @ 9:30am. |
| | 182 | -Memo of points & authorities in support of #181. |
| June 4 | 183 | Plaintiff's response of Hancock, Rothert & Bunshoft to motion by Mayock & Assoc for reconsideration of award of attorney's fees, 7-12-90 @ 9:30am. |
| 28 | 184 | Defendants' memo of law in opposition to motion for reconsideration of attorneys' fee judgment. |
| July 5 | 185 | Plaintiff's reply of Hancock, Rothert & Bunshoft to defendants' opposition to motion for reconsideration of award of attorney's fees by Mayock & Associates, 7-12-90 @ 9:30am. |
| 06 | 186 | Plaintiff's reply memo in support of motion for reconsideration of award of attorneys' fees |
| 13 | 187 | **MINUTES:** (c/r Candace Francis) Plaintiff's motion for reconsideration-granted. Court awards attorney fees for fees incurred up to 12-28-86 & ½ of fees incurred until 9/87 @ the prevailing rate @ the time.     CAL |
| Sept 20 | 188 | **ORDER:** The motion for reconsideration is granted in part & denied in part. Attorney fees for work performed by Mayock & Assoc from 4-1-85 - 12-23-86 $20,172.50; from 12-24-86 - 9-30-87 $4,710.00; for the motion for reconsideration $17,443.00; the reasonable costs $383.96. The attorneys' fees in the amount of $158,372.00 & costs of $9,598.03 for the work of Hancock Rothert & Bunshoft are awarded.     CAL<br>ENTERED: 9-25-90, copies mailed to counsel, clerk. |
| Oct 15 | 189 | Plaintiff's certificate of service of order awarding attorneys' fees. |
| Nov 13 | 190 | Defendant's **NOTICE OF APPEAL**, fee waived, USCA # ___90-16681___ . |
| 16 | | Docket fee payment notification & case information form mailed to USCA. |
| | | Sent copy of Notice of appeal to all appellees.     clerk |
| | 191 | Plaintiff's **NOTICE OF APPEAL**, fee paid, USCA # _____ . |
| 21 | | Docket fee payment notification & case information form mailed to USCA. |
| | | Sent copy of Notice of appeal to all appellees. |

JC 111A
Rev. 1/75)

CLOSING CARD PREPARED

SHEET "G"

CIVIL DOCKET CONTINUATION SHEET

C-85-5169 CAL

| PLAINTIFF | | DEFENDANT | DOCKET NO. _____ |
|---|---|---|---|
| **MAYOCK** | | **INS** | PAGE ____ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| **1990**<br>Nov 28 | 192 | **REPORTER'S TRANSCRIPT:** (c/r Candace L. Francis) 7-13-90. |
| **1991** | | |
| Dec 23 | 193 | Plaintiff's request for an expedited status conference and plaintiff's status conference statement. |
| Dec 27 | 194 | Clerk's notice setting status conference for 1/17/92 at 11:00am. |
| **1992** | | |
| Jan 17 | 195 | **MINUTES:** (C/R: not reported) Status conference not held; case continued to 1/24/92 at 11:00am for further status. |
| Jan 24 | 196 | **MINUTES:** (C/R: not reported)  Status conference held; case continued to 4/3/92 at 9:30am for motions; parties to conclude settlement discussions by 2/28/92 or file briefs by 3/20/92. |
| Mar  3 | | RECEIVED letter to Clerk re continuance of hearing to 5/1/92. |
| Apr 28 | 197 | **ORDER:**  the parties have advised the court that they have agreed to a settlement; it is hereby ordered that this action be dismissed with prejudice; if any party certifies to the court within 60 days that the settlement has not been delivered, the foregoing order will be vacated and this action will be restored to the calendar.                                                                                        CAL<br>ENTERED: 4-30-92, copies mailed to counseel, clerk. |
| May 27 | 198 | Plaintiff's notice of filing of settlement agreement. |
| May 27 | 199 | Plaintiff's notice of filing of settlement agreement. |
| Jun  8 | 200 | **ORDER FROM USCA:**  dismissing appeals 90-16681 and 90-16725 with prejudice. |
| Jun  9 | 201 | Clerk's letter spreading mandate re #200 mailed to counsel. |
| Jun 19 | 202 | Mail re #197 addressed to Neal Dittersdorf returned from Post Office. |
| **1993**<br>May 5 | 203 | JUDGMENT FROM USCA:  reversing and remanding (appeal 89-15977) |
| | 204 | Clerk's letter spreading mandate to counsel. |

Reproduced at the National Archives at San Francisco

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**FILED**

APR 28 1992

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JAMES R. MAYOCK,

    Plaintiff,

  v.

INS, ALAN NELSON, et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)

No. C-85-5169-CAL

1974

COPIES MAILED TO
PARTIES OF RECORD

## ORDER OF DISMISSAL

   The parties hereto, by their counsel, have advised the court that they have agreed to a settlement of this action.

   IT IS HEREBY ORDERED that this action be and it hereby is dismissed with prejudice; provided, however, that if any party shall certify to the court, with proof of service of a copy on opposing counsel, within sixty (60) days from the date of this order, that the agreed consideration for the settlement has not been delivered, the foregoing order will be vacated and this action will be restored to the calendar to be set for trial.

   Dated: April _28_, 1992.

           _Charles A. Legge_

          CHARLES A. LEGGE
          UNITED STATES DISTRICT JUDGE

ENTERED IN CIVIL DOCKET APR 30 1992 19

1  ERIC J. SINROD - State Bar No. 122868
   HANCOCK, ROTHERT & BUNSHOFT
2  Four Embarcadero Center, Tenth Floor
   San Francisco, California 94111-4168            F I L E D
3  Telephone:  (415) 981-5550

4  JAMES R. MAYOCK                                 MAY 2 7 1992
   CROSLAND, STRAND, FREEMAN & MAYOCK
5  260 California Street
   San Francisco, California 94111          RICHARD W. WEEKING, CLERK

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10
   JAMES R. MAYOCK,              )   No. C-85-5169-CAL
11                              )
              Plaintiff,         )   NOTICE OF FILING OF
12                              )   SETTLEMENT AGREEMENT
        vs.                      )
13                              )
   IMMIGRATION AND NATURALIZATION )
14 SERVICE, et al.,              )
                                )
15           Defendants.         )
                                )
16                              )
                                )
17                              )
                                )
18 _____)

19 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20         Plaintiff hereby submits for filing the final

21 Settlement Agreement disposing of all issues in this case.

22 DATED:  May 27, 1992            Respectfully submitted,

23                                HANCOCK, ROTHERT & BUNSHOFT

24

25                                By _____
                                        Eric J. Sinrod
26
                                  Attorneys for Plaintiff
27
   [3720:\800\096\EJS2163.pld]
28

HANCOCK, ROTHERT
& BUNSHOFT
FOUR EMBARCADERO CENTER
SUITE 1000
SAN FRANCISCO, CA
94111-4168
(415) 981-5550

ERIC J. SINROD
HANCOCK, ROTHERT & BUNSHOFT
Four Embarcadero Center
San Francisco, CA 94111
(415) 981-5550

JAMES R. MAYOCK
CROSLAND, STRAND, FREEMAN
  & MAYOCK
260 California Street
San Francisco, CA 94111
(415) 765-5111

Attorneys for Plaintiff

ELIZABETH A. PUGH
PAUL W. BRIDENHAGEN
U.S. DEPARTMENT OF JUSTICE
901 E Street, N.W.
Room 848
Washington, D.C.  20530
(202) 514-4781

Attorneys for Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JAMES R. MAYOCK,                    )
                                    )
            Plaintiff,              )
                                    )
        v.                          )    Civil No. C-85-5169-CAL
                                    )
IMMIGRATION AND NATURALIZATION      )
    SERVICE, et al.,                )    SETTLEMENT AGREEMENT
                                    )
            Defendants.             )
                                    )
_____)

Plaintiff, JAMES R. MAYOCK, and defendants, the IMMIGRATION

AND NATURALIZATION SERVICE ("I.N.S."), et al. (hereinafter

"defendant"), through their undersigned counsel, hereby agree as

follows:

1.     The parties do hereby resolve, settle and compromise all outstanding claims and issues, including all attorneys' fees and costs, arising from Civil Action No. 85-5169-CAL, United States District Court for the Northern District of California ("the action").

2.     This Settlement Agreement does not constitute an admission by the defendant that defendant, or any of its employees, has violated any law or statute as alleged in the complaint filed by plaintiff in the action.  Defendant specifically disclaims that it has engaged in any unlawful pattern and practice either by failing to produce certain categories of Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, information or by failing to respond timely to requests as required by the FOIA.

3.     This Settlement Agreement does not constitute an admission by plaintiff that its allegations that defendant engaged in a pattern and practice of violating various FOIA requirements lack merit.  Plaintiff also does not subscribe to defendants's legal interpretation of 5 U.S.C. § 552(a)(6)(C) and the applicable case law as specifically set forth in Attachment A to this Settlement Agreement.  Plaintiff otherwise does not necessarily agree that the electronic databases identified on page 2 of Attachment B to this Settlement Agreement constitute all relevant electronic databases to be searched.

4.     Defendant agrees to establish a national Policy on Priority for Processing Freedom of Information Act/Privacy Act

2

("FOIA/PA") Requests, which policy shall be disseminated to all
Regional Record Managers, conspicuously posted in all I.N.S.
district offices and a copy mailed to plaintiff's counsel, Eric
J. Sinrod, and to Lory Rosenberg, American Immigration Lawyers
Foundation, Legal Action Center in Washington, D.C. within two
weeks of the execution of this Settlement Agreement. The terms
of that national policy shall be as set forth in Attachment A to
this Settlement Agreement.

    5. Defendant further agrees that the San Francisco
District Office ("SFDO") will continue its present policies and
procedures for handling FOIA/PA requests and that the SFDO
District Director shall issue a policy statement setting forth
the terms of that present SFDO policy. That policy shall be
conspicuously posted at the SFDO and a copy mailed to
plaintiff's counsel, Eric J. Sinrod, and to Lory Rosenberg,
American Immigration Lawyers Foundation, Legal Action Center in
Washington, D.C. within two weeks of the execution of this
Settlement Agreement. The terms of that SFDO policy statement
shall be as set forth in Attachment B to this Settlement
Agreement.

    6. -Defendant further agrees to provide to plaintiff's
counsel, Eric J. Sinrod, and to Lory Rosenberg, American
Immigration Lawyers Foundation, Legal Action Center in
Washington, D.C. with national FOIA tracking data for all
district offices, concerning the total number of requests
processed during the month, average days necessary to complete

3

those requests, the number of cases pending and the average number of days that those cases have been pending, which shall be mailed to Mr. Sinrod and to Ms. Rosenberg by prepaid first class mail on or before the fifteenth of each month for a period of two years after the execution of this Settlement Agreement.

7. Defendant further agrees to pay plaintiff the lump sum amount of $250,000 in attorneys' fees and costs, which amount shall be paid in full satisfaction of all claims for attorneys' fees and costs that have been made or could have been made by any attorney who participated in the litigation of this case in any capacity. No deductions of any type shall be taken from this lump sum payment, which defendant shall tender to plaintiff by means of a check or electronic transfer payable jointly to James R. Mayock and Hancock, Rothert & Bunshoft. Plaintiff and/or his counsel are liable for payment of all applicable taxes and other deductions from this amount. If this payment is not tendered before June 26, 1992, plaintiff shall retain the right to request the district court to postpone dismissal provided for in the District Court's Order of Dismissal, dated April 28, 1992, but only until such time as plaintiff receives such payment.

8. In exchange for the consideration to be provided by defendant, as set forth above, plaintiff forever waives and releases all claims and causes of action that plaintiff has alleged or could have alleged against the defendant and all I.N.S. employees in this litigation. Plaintiff reserves the

4

right to bring a subsequent action should he believe that an
I.N.S pattern and practice of failing to comply with FOIA has
occurred after this litigation has concluded.

9.   Plaintiff further agrees not to challenge the District
Court's Order of Dismissal, dated April 28, 1992, within the 60
day time period provided in that Order, provided that defendant
fulfills all of its obligations set forth in paragraphs 4, 5, 6
and 7, above.  Plaintiff and defendant further agree voluntarily
to dismiss their respective attorneys' fees appeals in the
United States Court of Appeals for the Ninth Circuit, appeal
numbers 90-16681 and 90-16725 with prejudice, by simultaneously
executing this Settlement Agreement and the stipulation of
dismissal attached hereto as Attachment C and immediately filing
the executed stipulation of dismissal with the Ninth Circuit
Court of Appeals.

10.   The parties agree that should plaintiff believe there
has been any breach of this Settlement Agreement, he shall
provide the SFDO District Director with notice in writing of any
such perceived breach.  The SFDO shall, within two weeks of the
date of receipt of that notice, respond in writing to the
substance of that claim and shall undertake a good faith effort
to resolve plaintiff's concerns.  The SFDO would then have an
additional two weeks to meet with and/or make a good faith
effort to resolve plaintiff's claim.  During the four weeks
following the receipt of plaintiff's written notice at the SFDO,
plaintiff shall not institute any pattern and practice lawsuit

5

in district court concerning a perceived breach of the Settlement Agreement. At the end of that four week period, however, plaintiff shall be free to seek relief in district court for any perceived breach of the Settlement Agreement that he believes have not been corrected by the SFDO.

11. Defendant retains the right to amend, change, revise, or terminate any practice or policy of concern herein. Plaintiff, in the event of any such amendment, change, revision, or termination by defendant of any practice or policy of concern herein, shall retain the right to institute a new action challenging any such amendment, change, revision or termination and any of its consequences.

12. The parties acknowledge that they enter into this agreement freely and voluntarily and that this agreement is intended by the parties to be the full and final settlement of the matters encompassed herein, and there are no terms and conditions of settlement not set forth herein.

5/22/92
DATE

ERIC J. SINROD
Hancock, Rothert & Bunshoft
Four Embarcadero Center
San Francisco, CA 94111-4168
Tel: (415) 981-5550

5/22/92
DATE

JAMES R. MAYOCK
CROSLAND, STRAND, FREEMAN
& MAYOCK
260 California Street
San Francisco, CA 94111
Tel: (415) 765-5111

Attorneys for plaintiff

6

5/21/92
**DATE**

_Paul W. Bridenhagen_

**PAUL W. BRIDENHAGEN**
Department of Justice
901 E Street, N.W., Room 848
Washington, D.C.  20530
Tel:  (202) 514-4781

**Attorney for defendants**

7

Attachment A

## DRAFT PRIORITY PROCESSING PROGRAM

The purpose of this memorandum is to set policy for
establishing priority for processing Freedom of Information
Act/Privacy Act ("FOIA/PA") requests and the procedures to be
used by INS offices when acting on requests that ask for
"expedited processing."

The FOIA, 5 U.S.C. § 552(a)(6)(A), requires federal agencies
to determine whether to release requested documents within 10
working days.  If an agency fails to comply with this
requirement, the requester may treat the failure as an exhaustion
of administrative remedies and file suit.  5 U.S.C. § 552(a)
(6)(B) allows this period to be extended for an additional 10
working days in the event of "unusual circumstances" as follows:

> (i) the need to search for and collect the requested records
> from field facilities or other establishments that are
> separate from the office processing the request;

> (ii) the need to search for, collect, and appropriately
> examine a voluminous amount of separate and distinct records
> which are demanded in a single request; or

> (iii) the need for consultation, which shall be conducted
> with all practicable speed, with another agency having a
> substantial interest in the determination of the request or
> among two or more components of the agency having
> substantial subject matter interest therein.

Those INS FOIA/PA offices which have such a backlog that the
extension authorized in these unusual circumstances would be
irrelevant should rely on the language of 5 U.S.C. §  552(a)
(6)(C).  The leading case on this provision is Open American v.
Watergate Special Prosecuting Force, 547 F.2d 605 (D.C. Cir.
1976), which provides that a volume of requests beyond that which
an agency could reasonably have anticipated constitutes
"exceptional circumstances," and that processing these requests
on a "first-in, first-out" basis satisfies the requirement that
an agency exercise due diligence in dealing with this backlog.

In general, each INS FOIA/PA office must adopt a first-in,
first-out [FIFO] processing policy as its basic guideline in
determining the order in which it processes requests.  If strict
FIFO processing of all requests regardless of the volume of
records requested would cause some requesters with simple
requests to wait for extraordinary periods of time while a
limited number requesters with exceptionally complex requests are
served, individual offices may adopt a multi-track system as
follows:

**Track 1 - Simple Requests**

> -- Require five days or less to process.
>
> -- Request a limited number of documents.
>
> -- Involve minimal review for claims exemptions.

Simple requests are those which require five days or less to process, including requests for only one or two specific documents that are easily accessed and which, by their nature would not normally be exempt from the requester (<u>e.g.</u>, request for a copy of one's own birth certificate or naturalization certificate).

**Track 2 - Complex Requests**

> -- Require more than five days to locate, review and prepare for disclosure.
>
> -- Request more than a limited number of documents.
>
> -- Involve more than a minimal review for claims exemption.

Complex requests are those which it is estimated that the records sought in the request will take more than five days to locate, review, and prepare the requested records for disclosure (<u>e.g.</u> files requiring line-by-line review of numerous pages of personal information; classified files requiring review for national security implications; investigative files, particularly those that are of current or recent investigations, that require careful coordination with investigative personnel; and sensitive internal memoranda that are part of the decision-making process).

**Simultaneous Two-Track FIFO Processing**

Under this two-track system some simple requests will be processed ahead of more complex ones which may have been received earlier. This procedure, however, will not negate a claim of due diligence as long as the FIFO approach within each track is maintained, and a good faith effort is made to process all requests as expeditiously as possible. FOIA offices may not, however, devote all, of their resources to processing Track 1 over Track 2, or vice-versa.

**Expedited Processing for Demonstrated Exceptional Need or Urgency**

A requester who demonstrates, consistent with applicable guidances and law, an "exceptional need or urgency", shall have his/her request processed out of turn on an "expedited" basis. The currently applicable guidance, set forth in the Attached Department of Justice FOIA UPDATE, Summer 1983, provides that

FOIA offices are to grant such treatment when the requester demonstrates that:

a. an individual's life or personal safety would be jeopardized by the failure to process a request immediately; or

b. substantial due process rights of the requester would be impaired by the failure to process immediately, and the information sought is not otherwise available.

## Procedures for Expedited Processing

A request for expedited processing which demonstrates either of the above circumstances shall be processed immediately.

A request which fails to meet the above criteria shall be denied expedited processing and shall be processed on the appropriate track. A requester must be notified in writing of the decision not to grant the request for expedited treatment, and advised of his/her right and the procedures to appeal the decision. Sample letters for this notification are enclosed.

Please disseminate this policy to your FOIA/PA Officers and insure that each is fully aware of these requirements. This rescinds HQINF memorandum 1491-P, dated March 1990, same subject. Any questions concerning this policy should be directed to Mildred Carter, FOIA/PA Specialist, or Russell Powell, Chief of FOIA/PA Section, on FTS 368-1722.


Robert L. Martinez
Assistant Commissioner


Enclosures

cc: Regional Administrators
    District Directors

IMMIGRATION AND NATURALIZATION SERVICE
San Francisco District Office

Policies & Procedures for Handling FOIA Requests

The purpose of this memorandum is to set forth the San
Francisco District Office's ("SFDO's") policies and procedures
for handling Freedom of Information Act ("FOIA") requests.
All SFDO FOIA personnel shall adhere to the policies and
procedures set forth below in responding to a FOIA request.

I.   Receipt and Logging of Requests

    A.   Mailed Requests

        1.   The FOIA unit will promptly retrieve its
             mail each time the mail is delivered and
             date stamp all requests with that day's
             date.

        2.   After date stamping the request, the request
             will be entered into the FOIA computer
             tracking system in the appropriate category.

        3.   An acknowledgement of receipt of the FOIA
             request will be mailed to the requester
             within two days of the receipt of the
             request.

    B.   Hand Delivered Requests

        1.   All requests that are hand-delivered will be
             date stamped with that day's date promptly
             upon receipt.

        2.   After date stamping the request, the request
             will be entered into the FOIA computer
             tracking system in the appropriate category.

        3.   An acknowledgement of receipt of the FOIA
             request will be mailed to the requester
             within two days of the date the request is
             received if not handed to the requester
             while he is still in the office.

II.  Screening Requests and Obtaining Alien File

    A.   The location of the Alien File from which
         information has been requested will be
         determined promptly.

    B.   If the Alien File is located in another files
         control office (FCO):

1. The FOIA request will be immediately forwarded to that office.

2. The requester will be mailed a notice of the request's transfer to another office within two days of the date the transfer is made.

3. If the request is for "all files", a search of electronic data bases will be made and releasable information located will be sent to the requester with the notice of transfer.

C. If the Alien File is located in the Immigration Card Facility, a request for the file will be made immediately. The request will then be treated as if this office were the original FCO.

D. If the Alien File is located in this District, it will be obtained promptly so that work can begin.

III. Working the Request

A. The Alien File will be received and appropriate deletions made and identified in accordance with statutes, regulations and established procedures.

B. The following electronic databases will be searched by name and date of birth of the subject of the request, as necessary for each request.

1. Central Index System (CIS)

2. Deportable Alien Control System (DACS)

3. Fees Applications Receipt Entry System (FARES)

4. Naturalization Casework System (NACS)

5. Non-Immigrant Information System (NIIS)

6. Student/School System (STSC)

7. Legalization Application System (LAPS)

8. Any pertinent systems established subsequently.

- 2 -

C. Information obtained from the electronic data bases listed in III.B. above will be processed in a like manner to information in the Alien-Files.

D. Audio/video records pertaining to the subject of the request will also be considered for release.

IV. Extension of Time

A. All SFDO FOIA personnel shall comply with the time requirements set forth in 5 U.S.C. § 552(a)(6)(A), (B), and (C).

B. An extension of time under 5 U.S.C § 552(a)(6)(B) for a response to the requester can be used only in the following circumstances:

1. Some or all of the requested records/ information must be obtained from another office.

2. The volume of records to be reviewed is unusually large.

3. Other federal government agencies of Department of Justice component must be consulted.

C. If an extension of time is appropriate under 5 U.S.C § 552(a)(6)(B), a letter of explanation will be sent promptly to the requester explaining the reason for the delay and setting a new response date.

D. Where an extension of time pursuant to 5 U.S.C § 552(a)(6)(B) is determined to be appropriate, the final response shall be within 20 working days of the original request date.

V. Information Disclosure

A. Entire Page Withheld

1. When an entire page of a file is withheld from disclosure to a FOIA requester, the specific subject matter of the withheld sheet need not be identified.

2. When an entire page of a file is withheld, however, the following information will be released in lieu of the page itself:

- 3 -

        a.    The "in lieu of" page will be identified in its upper right hand corner with the page number of the page withheld, e.g. L-7, R-29, etc.

        b.    "Entire Page" will than be placed immediately beneath the page number.

        c.    Centered in the upper half of the "in lieu of" page will be the U.S.C. citation that exempts from disclosure the withheld page.

        d.    Centered in the lower half of the "in lieu of" page will be the identification of the withheld page by type, form number and date, as applicable, e.g. Attorneys' Worksheet, 1/23/89 or Investigator's Worksheet, SF-10, 2/14/88.

**B.** Less Than Entire Page Withheld

    **1.** When less than an entire page is withheld, a numerical citation to the statutory section relied upon for exemption from disclosure will be placed adjacent to redacted information.

    **2.** The form number, date, and any information which generally describes the type of form will ordinarily not be redacted, in order to assist the requestor in making a decision as to whether or not to appeal the decision to exempt information from disclosure.

**VI.** Review and Distribution of Completed Request

    **A.** After the requested records and information have been gathered, a cover letter will be prepared indicating what types of documents are being withheld and correlating that with the exemption(s) relied upon.

    **B.** After approval by appropriate officials, the cover letter will be signed by the District Director, or his designee, and the package then mailed to the requester.

- 4 -

C.    If the requester has an urgent need for the
      information and has asked to pick-up the
      package rather than having it mailed, the
      requester will be notified by phone that
      the package is ready.

D.    A copy of any material not released
      to the requester will be kept by this office
      for the specified time period.

E.    As the final step, the request will be closed
      out of the FOIA computer tracking system.

Attachment C

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| JAMES R. MAYOCK, | ) | NO.  90-16681 |
| | ) | |
| Plaintiff-Appellee, | ) | DC#  CV-85-05169-CAL |
| | ) | (Northern California) |
| v. | ) | San Francisco |
| | ) | |
| U.S. IMMIGRATION AND | ) | |
| NATURALIZATION, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| JAMES R. MAYOCK, | ) | NO.  90-16725 |
| | ) | |
| Plaintiff-Appellant, | ) | DC#  CV-85-05169-CAL |
| | ) | (Northern California) |
| v. | ) | San Francisco |
| | ) | |
| ALAN NELSON | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

The parties, having entered into a Settlement Agreement of all
issues raised by the plaintiff in this litigation, hereby stipulate
that appeals No. 90-16681 and No. 90-16725 shall be dismissed with
prejudice.


_____          _____
   DATE             ERIC J. SINROD
                    Hancock, Rothert & Bunshoft
                    Four Embarcadero Center
                    San Francisco, CA 94111-4168
                    Tel: (415) 981-5550

_____
DATE

_____
JAMES R. MAYOCK
CROSLAND, STRAND, FREEMAN
   & MAYOCK
260 California Street
San Francisco, CA 94111
(415) 765-5111


_____
DATE

_____
RICHARD M. PEARL
685 Market Street, Suite 690
San Francisco, CA  94105
(415) 243-9912

Attorneys for plaintiff


_____
DATE

_____
PAUL W. BRIDENHAGEN
Department of Justice
901 E Street, N.W., Room 848
Washington, D.C.  20530
Tel:  (202) 514-4781
Attorney for defendants

2

1      <u>PROOF OF SERVICE</u>

2           I declare that:

3           I am, and was at the time of service hereinafter
   mentioned, at least 18 years of age and not a party to the above-
4  entitled action.  My business address is Four Embarcadero Center,
   Tenth Floor, San Francisco, California 94111.  I am a citizen of
5  the United States and am employed in the City and County of San
   Francisco.
6
           On May 27, 1992, I served the foregoing NOTICE OF
7  FILING OF SETTLEMENT AGREEMENT upon the parties as listed below
   in this action by placing a true and correct copy thereof in
8  sealed envelopes as follows:

9  James R. Mayock, Esq.
   Crosland, Strand, Freeman & Mayock
10 260 California Street, 9th Floor
   San Francisco, CA  94111
11

12 Paul Bridenhagen, Esq.
   Department of Justice
13 901 E Street N.W., Room 848
   Washington, D.C. 20530
14
   <u>FOR COLLECTION AND MAILING AT HANCOCK, ROTHERT & BUNSHOFT:</u>
15

16 I am readily familiar with Hancock, Rothert & Bunshoft's practice
   for collecting and processing of correspondence, said practice
17 being that in the ordinary course of business, correspondence
   (with postage thereon fully prepaid) is deposited in the United
18 States Postal Service the same day as it is placed for
   collection.
19
           I declare under penalty of perjury that the foregoing
20 is true and correct.

21           Executed on May 27, 1992 at San Francisco, California.

22

23

24                              Elizabeth S. Aguero

25

26

27

28

HANCOCK, ROTHERT
& BUNSHOFT
FOUR EMBARCADERO CENTER
SUITE 1000
SAN FRANCISCO, CA
94111-4168
(415) 981-5550

                                    - 2 -